John E. WASHINGTON

v.

Margaret M. HECKLER, Secretary of Health and Human Services.

Civ. A. No. 82–3712.

United States District Court,
E.D. Pennsylvania.

Nov. 9, 1983.

James M. Lafferty, Community Legal Services, Inc., Philadelphia, Pa., for plaintiff.

Edward T. Ellis, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

OPINION

LUONGO, Chief Judge.

On May 12, 1983, I adopted the Report and Recommendation of Magistrate Richard A. Powers, III and granted plaintiff's motion for summary judgment in his suit to overturn the termination of his Supplemental Security Income (SSI) benefits. There is now before me plaintiff's petition for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). For the

reasons discussed below, I will deny the petition.

Plaintiff, a 52 year old male, had been found eligible for SSI benefits in March, 1978 as a result of a disability described as a lumbar nerve root compression. Plaintiff's back problems were caused by an automobile accident which occurred in 1976. Prior to that time, plaintiff had worked as a self-employed painter and paperhanger. (Magis.Rep. at 2). In September 1980, the Social Security Administration determined that plaintiff's disability had ceased as of August of that year. (Magis.Rep. at 1). After a hearing on May 27, 1981, an Administrative Law Judge (ALJ) determined that plaintiff was not disabled because he retained the residual capacity to perform light work. (Tr. 13). Review was denied by the Appeals Council, and a petition challenging the Secretary's action was filed in this court.

Approving the Report and Recommendation of Magistrate Powers, I granted summary judgment in plaintiff's favor. In so ruling, I found that the Secretary's decision holding plaintiff not disabled was not supported by substantial evidence.[1] In reaching this conclusion, I relied on both the medical reports submitted by physicians who examined plaintiff and plaintiff's testimony before the ALJ.

The medical reports submitted with respect to plaintiff's physical condition indicated that he did not have the capacity to engage in substantial gainful employment. In a report dated October 10, 1979, Dr. John Sbarbaro stated that plaintiff complained of pain in his spine and legs, and that his condition had gotten progressively worse since his lumbar laminectomy and disc excision in 1978. Dr. Sbarbaro commented that plaintiff appeared "to be in constant pain and [that] his rather dramatic stiffness in his low back is characteristic of either a degenerative process or a chronic inflammatory process of the low back." Based on his examination of the plaintiff,

which was arranged by the Secretary, Dr. Sbarbaro concluded that plaintiff "may well be permanently disabled." (Tr. at 134).

Dr. Martin Blaker, a physician selected by the Social Security Administration, also filed a report. His report indicated that plaintiff was physically capable of "flexion of the lower back," and that he could perform "a full range of squatting." (Tr. at 139). Nevertheless, Dr. Blaker recorded that plaintiff complained of pain in his neck, lower back, and legs. In view of plaintiff's claims of pain and his previous back surgery, he diagnosed plaintiff as "status post lumbar laminectomy and disc excision," and concluded that plaintiff "should restrict his activities generally, as regards the lower back." (Tr. at 139).

A third medical opinion was rendered by Dr. Pushpa Thakarar of the Hospital of the University of Pennsylvania. Dr. Thakarar diagnosed conditions of "chronic arachnoiditis and degenerative joint disease" as well as "chronic cervical strain." (Tr. at 178). These conclusions were based on symptoms of pain in plaintiff's neck which radiated to his shoulder blades, constant pain in the lumbar region of plaintiff's lower back which radiated to both legs, and plaintiff's inability to walk in excess of 2 or 3 blocks. (Tr. at 177). On the basis of his findings, Dr. Thakarar concluded that plaintiff should be "restricted from any activities which require movement of the cervical and lumbar spine area," such as "pushing, pulling, bending, prolonged sitting as well as prolonged standing...." (Tr. at 178).

In addition to the medical reports, two psychological evaluations of plaintiff were presented to the ALJ. Dr. Napoleon Vaughn, a psychologist, determined, after a battery of psychological tests, that plaintiff was not eligible for social security benefits on the basis of psychological criteria alone. Although he stated that plaintiff, because of his lack of reading and mathe-

---

1. Although I accepted the Magistrate's Report and Recommendation for the purpose of resolving plaintiff's motion for summary judgment, I do not, particularly in the context of the present motion, agree with some of the Magistrate's overly broad statements concerning the ALJ's treatment of plaintiff's claim. For example, I do not agree that the ALJ's reasoning was "arbitrary" or "grossly unfair." *Cf.* Magis.Rep. at 9–10.

matical skills, was an "academic cripple," Dr. Vaughn reasoned that plaintiff's intelligence was within the normal range, and that he was competent to manage his own funds. (Tr. at 175). Dr. Vaughn did, however, strongly recommend a psychiatric evaluation.

The psychiatric evaluation was performed by Dr. Lance Wright. Dr. Wright found plaintiff to be alert and without "gross cognitive disorder." (Tr. at 184). Dr. Wright, however, reported that plaintiff has engaged in little activity since his automobile accident, and that he has been depressed and, at times, thought of suicide. (Tr. at 183). Dr. Wright found that plaintiff continued to suffer from the effects of his automobile accident, and concluded that he suffered from a major affective disorder, recurrent depression, and alcohol abuse. (Tr. at 184).

Plaintiff's testimony before the ALJ focused on his back problems and inability to work. In large measure, plaintiff's testimony concerning his ailments corroborated the medical analyses submitted to the ALJ. Plaintiff testified that he continued to suffer pain in his back, legs, buttocks, and arms. He stated that he had spasms in his buttocks, and that his pain intensified when he sat down, particularly on hard chairs. Plaintiff testified further that his right leg was weak, and that he lost his balance and had fallen when too much weight was placed on his right leg. (Tr. at 39–40). Plaintiff testified that he had submitted an application for vocational rehabilitation to the J.F.K. Center so that he could become qualified to work as a tailor. Indeed, at first plaintiff stated that he thought he could handle such a job, but when pressed by the ALJ, he testified that he could not perform a tailor's duties in his physical condition at that time. (Tr. 61–62).

On the basis of all the evidence presented, the ALJ held that plaintiff, notwithstanding the restrictions on his back movement, retained the residual capacity to perform light work, and terminated plaintiff's SSI benefits. On appeal, I adopted Magistrate Powers' recommendation that I find that the ALJ's decision was not supported by substantial evidence, and I ordered the benefits reinstated.

Having successfully challenged the Secretary's termination of his SSI benefits, plaintiff now moves the court to award attorney's fees under the EAJA. The Secretary does not dispute that attorney's fees may be awarded under the EAJA for suits arising under the Social Security Act.[2] Nor does the Secretary argue that plaintiff has not incurred legal expenses within the meaning of the Act.[3] The Secretary contends simply that her position in this case was "substantially justified."

Under the Equal Access to Justice Act, Congress ordered that the government pay the attorney's fees of litigants that prevail against the United States except under certain circumstances. Section 2412(d)(1)(A) of the Act provides:

> Except as otherwise specifically provided by statute, a court *shall award* to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

(Emphasis added.)

■■■ Subsequent rulings under the EAJA clearly indicate that attorney's fees may be awarded in favor of litigants challenging the termination of Social Security benefits. *Guthrie v. Schweiker, supra. See also National Resources Defense Council v. United States Environmental Protection Agency,* 703 F.2d 700, 706 & n. 13 (3d Cir.1983) (hereinafter *"NRDC"*); *Watkins v. Harris,* 566 F.Supp. 493 (E.D. Pa.1983); *Ocasio v. Schweiker,* 540 F.Supp. 1320 (S.D.N.Y.1982). It is also clear that

---

**2.** *Cf. Guthrie v. Schweiker,* 718 F.2d 104 (4th Cir.1983).

**3.** *Cf. Lonning v. Schweiker,* 568 F.Supp. 1079, 1082 (E.D.Pa.1983).

once the government has lost a case, the burden of establishing substantial justification for the government's position rests with the agency involved. As the Court of Appeals for the Third Circuit recently stated: "[T]he government must make a 'strong showing' that its position was substantially justified." *NRDC*, 703 F.2d at 712, citing, H.R.Rep. No. 1418, 96th Cong. 2nd Sess., 16, 18, *reprinted in* 1980 U.S. Code Cong. & Ad.News 4953, 4995, 4997 (hereinafter H.R.). *See also Ulrich v. Schweiker*, 548 F.Supp. 63, 65 (D.Idaho 1982); *Berman v. Schweiker*, 531 F.Supp. 1149, 1153 (N.D.Ill.1982), *aff'd*, 713 F.2d 1290 (7th Cir.1983).

Congress did not intend, however, that the government be penalized by an award of attorney's fees in every case that results in an adverse decision. *Dougherty v. Lehman*, 711 F.2d 555, 563 (3d Cir.1983). Indeed, in describing the criteria governing awards of attorney's fees, the legislative history to the EAJA states:

> The standard, however, should not be read to raise a presumption that the Government position was not substantially justified, simply because it lost the case. Nor, in fact, does the standard require the Government to establish that its decision to litigate was based on a substantial probability of prevailing.

H.R. at 11. *See also Ceglia v. Schweiker*, 566 F.Supp. 118, 123 (E.D.N.Y.1983); *Hornal v. Schweiker*, 551 F.Supp. 612, 617 (M.D.Tenn.1982).

Responding to the EAJA's direction that attorney's fees be awarded when the position taken by the government was not substantially justified, the Court of Appeals for the Third Circuit recently articulated a standard of proof to be used in determining whether a position taken by the government was substantially justified. *Dougherty v. Lehman, supra.* The Third Circuit's formulation, like that of several other courts, describes the standard under the EAJA as one of reasonableness, a middle ground between a rule mandating automatic awards of fees and the traditional bad faith exception to the "American rule." *Dougherty*, 711 F.2d at 563. *See also Foley Construction Company v. U.S. Army Corps of Engineers*, 716 F.2d 1202 (8th Cir.1983); *Foster v. Tourtellotte*, 704 F.2d 1109, 1112 (9th Cir.1983); *Berman v. Schweiker, supra; Kauffman v. Schweiker*, 559 F.Supp. 372, 375 (M.D.Pa.1983).

The *Dougherty* court further clarified the government's burden under the EAJA by specifying that the government's position must be demonstrated as reasonable in terms of the facts alleged, the theory of law argued, and in the application of the government's legal theory to the facts alleged.

The Court ruled that the government must:

> First, show that there is a reasonable basis in truth for the facts alleged in the pleadings.

> .    .    .    .    .

> Second, the government must show that there exists a reasonable basis in law for the theory which it propounds.

> .    .    .    .    .

> Finally, the government must show that the facts alleged will reasonably support the legal theory advanced.

711 F.2d at 564 (citations and footnotes omitted).

The Court of Appeals, however, did not deal specifically with the standard to be employed in the context of judicial review of the merits of administrative agency actions. In such cases, the courts generally are bound to uphold the agency's decision unless the ruling was not supported by substantial evidence. If the substantial justification test formulated under the EAJA is interpreted in a manner coextensive with the standard against which the merits of the agency's action are measured, it would appear that any judicial decision in favor of the party challenging the agency's decision would require an award of attorney's fees *automatically. See NRDC*, 703 F.2d at 719 (Hunter, J., dissenting); *Operating Engineers Local Union No. 3 v. Bohn*, 541 F.Supp. 486, 495 (D.Utah 1982). As the Court of Appeals recognized in *Dougherty v. Lehman, supra,* however, Congress specifically disclaimed any intent

to require an automatic award of fees, and the EAJA should not be interpreted in such an unbending fashion. This construction should apply with equal force in actions challenging the conduct of administrative agencies. In enacting the EAJA, Congress was well aware of the various statutory schemes providing for judicial review of administrative or executive agency determinations on a "substantial evidence" or other modified basis. Having expressed no intention to mandate automatic awards of attorney's fees to parties prevailing against the government in such cases, Congress presumably intended the appropriateness of such awards to be decided separately from the decision on the merits of the agency's action.

■ In applying the *Dougherty v. Lehman* criteria to fee petitions filed by parties that successfully challenge governmental agency decisions, therefore, the court must bear in mind that a finding that the underlying agency ruling was not supported by substantial evidence does not necessarily indicate that the position asserted by the government, taken as a whole, lacked a substantial basis.[4] When dealing with fee petitions such as the one now advanced by plaintiff, the court must examine the government's position at both the litigation and pre-litigation stages,[5] and decide whether reasonable minds could disagree as to whether the agency's conduct was supported by substantial evidence. If, after considering the original agency determination and its relationship to the law as it then existed, the court is convinced that the government was unreasonable in proceeding to litigation, an award of attorney's fees is warranted. If, on the other hand, the court, after extended deliberation, determines that, by a narrow margin, the agency's decision lacked a substantial basis, such an award would be improper.

■ Reviewing the medical and testimonial evidence now before me, I conclude that the instant case falls into the latter category. Although I have agreed with Magistrate Powers that the ALJ's decision to terminate plaintiff's SSI benefits was not supported by substantial evidence, I am persuaded that the government's conduct, both at the administrative stage and before this court, was substantially justified.

Primarily, I find that the Secretary had a reasonable basis for the factual allegations relied upon in her decision. Although the record compiled by the ALJ revealed evidence that plaintiff suffered from both exertional and nonexertional impairments, there was also some evidence to indicate that plaintiff was capable of performing light work.

The evidence regarding plaintiff's nonexertional impairment certainly was far from one-sided. Dr. Napoleon Vaughn, a psychologist, performed a battery of tests upon plaintiff, and concluded specifically that plaintiff was not entitled to Social Security benefits. In his report submitted to the ALJ, Dr. Vaughn noted that plaintiff gave the immediate impression that nothing was wrong with him. (Tr. at 172). Moreover, Dr. Vaughn stated that plaintiff "at no time appeared in acute distress" despite "long hours of psychological testing and [a] lengthy clinical interview." (Tr. at 173). Finally, although plaintiff's intelligence was "dull normal" and his reading skills poor, plaintiff revealed that he was competent to handle his own financial affairs.

Against Dr. Vaughn's report, the ALJ had to consider the report of Dr. Lance Wright, a psychiatrist who diagnosed plaintiff as suffering from, *inter alia,* a major affective disorder and alcohol abuse. (Tr. at 184). Dr. Wright's report, however, did not specify what impact plaintiff's recur-

---

**4.** Some courts have ruled that the appropriate standard under the EAJA for such cases is a "no evidence" standard. *See, e.g., Wolverton v. Schweiker,* 533 F.Supp. 420, 425 & n. 14 (D.Idaho 1982); *Cornella v. Schweiker,* 553 F.Supp. 240, 244 (D.S.D.1982). On the facts of this case, I need not consider whether a "no evidence" standard is consistent with the Court of Appeals'

formulation of the government's burden of proof in *Dougherty v. Lehman* because the quantum of proof adduced by the Secretary is sufficient to preclude an award of fees even under a more demanding approach.

**5.** *Dougherty v. Lehman,* 711 F.2d at 563 n. 12.

rent bouts with psychological instability might have upon his ability to engage in substantial gainful activity. Moreover, Dr. Wright's report itself noted that plaintiff was alert and oriented, and that he suffered from no "gross cognitive disorder." (Tr. at 184).

After reviewing again the reports of Drs. Vaughn and Wright, plaintiff's testimony, and the ALJ's written opinion, I am persuaded that the Secretary had a reasonable basis in fact for her contention that plaintiff suffered no nonexertional impairment sufficiently debilitating to preclude him from performing light work. The evidence before the ALJ on this point was conflicting, and the ALJ simply found Dr. Vaughn's more detailed report and explanation more convincing.

The evidence regarding plaintiff's physical impairment presents a more difficult question. Indeed, my earlier decision that the Secretary's termination of plaintiff's benefits was without substantial evidence rested primarily upon this aspect of the case. Nevertheless, after reviewing the record in the context of the present motion, I am persuaded that the government's position, taken as a whole, was substantially justified.

Initially, the plaintiff's own testimony before the ALJ furnished some doubt concerning the credibility of his subjective claims of pain. When asked by the ALJ about his efforts to obtain employment, plaintiff specifically stated that he had submitted an application for vocational rehabilitation as a tailor. Further, when asked whether he thought he was physically capable of performing the job of a tailor, plaintiff answered in the affirmative. (Tr. at 61). Although plaintiff quickly recanted that statement when reminded by the ALJ that such a position would involve alternate sitting and standing, I recognize that plaintiff's testimony could have raised a question of credibility in the mind of the ALJ, who, of course, was the only factfinder in this case to have an opportunity to observe plaintiff's demeanor and physical condition.

Secondly, although I have found that the medical reports submitted to the ALJ do not support a finding that plaintiff was capable of performing light work, I conclude that the reports contained sufficient evidence to justify the Secretary's position. As noted above, Dr. Blaker concluded that plaintiff should restrict his lower back movement, but Dr. Blaker's report also revealed that plaintiff's ability to perform a wide variety of back flexion tests was unimpaired. The report stated:

> The principal lumbar nerve was normal. Flexion of the lower back was done with fingers reaching to within 12 inches of the toes. Return to the erect was normal and extension was done to 20 degrees. Right and left lateral bendings were 20 degrees each. A full range of squatting was seen and return to the erect was normal. In the supine position straight leg raising was done bilaterally to 80 degrees with negative Lasegue signs at the same angles. Passive lumbar flexion and rocking were normal. Deep tension reflexes were equal and active bilaterally in both lower extremities. He indicated no tenderness in the lower lumbar midline.

(Tr. at 139).

Dr. Thakarar's report also contained some evidence that plaintiff's lower back retained a significant range of flexion. Referring to a series of tests that was submitted as part of his report (see Tr. at 179–80), Dr. Thakarar recognized that plaintiff's cervical spine retained flexion of 0 to 20 degrees bilaterally, flexion and extension of 0 to 30 degrees, and rotation to the right and left of 0–30 degrees. (Tr. at 178).

In short, although I have found that the Secretary failed to adduce that quantum of evidence sufficient to sustain the merits of her ruling under the substantial evidence standard, I am persuaded that the factual assertions made by the government were substantially justified.

Under the Third Circuit's *Dougherty v. Lehman* analysis, the court must next inquire whether the *legal* position taken by the government was justified. The government must demonstrate that "there exists

a reasonable basis in law for the theory which it propounds." *Dougherty v. Lehman,* 711 F.2d at 564.

On the facts of this case, I am likewise persuaded that the Secretary was substantially justified with respect to her legal theory. The Secretary proposed no novel or unwarranted construction of law to support her decision; the legal theory here propounded by the Secretary was simply that a claimant with the same age, experience, and education as plaintiff who is found capable of light work is not entitled to disability benefits. This proposition is based upon the Secretary's duly promulgated rules which now govern Social Security disability claims relating to exertional impairments.

There is no doubt that, had I upheld the Secretary's factual determination that plaintiff was capable of light work, the applicable rule would mandate denial of plaintiff's claim. *See* 20 C.F.R. Subpart P, Appendix 2, Table 2, Rule 202.11 (1981). Moreover, there is no doubt that the Secretary may utilize such regulations to decide the disability claims of similarly situated claimants. *Heckler v. Campbell,* 461 U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

In his earlier motion for summary judgment, however, plaintiff advanced the argument that the rules governing exertional disorders were not applicable to his claim because there was evidence that he suffered from a nonexertional impairment. *See Santise v. Schweiker,* 676 F.2d 925, 934–935 (3d Cir.1982). In the context of the present motion, plaintiff's argument could be construed as an attack upon the legal basis of the Secretary's decision. Although I recognize that in an appropriate case the Secretary's reliance upon exertional impairment criteria to defend her denial of benefits to a claimant afflicted by a nonexertional disorder might not satisfy her burden under the substantial justification test, this is not such a case. The evidence of plaintiff's psychological stability submitted to the ALJ through the reports of Dr. Vaughn and Dr. Wright was certainly sufficient to provide the Secretary with substantial justification for her assertion that the exertional impairment criteria should apply to plaintiff's claim. I therefore find that the Secretary's position was reasonable in law.

Finally, I must decide whether the facts alleged by the Secretary reasonably supported her legal theory. *Dougherty v. Lehman,* 711 F.2d at 564. In this case, this final inquiry requires me simply to decide whether the termination of plaintiff's benefits would have been proper if I had accepted the Secretary's assertion that plaintiff retained the residual capacity to perform light work. Because I have found that the Secretary was substantially justified in asserting that plaintiff retained such capacity, and because it is clear that the class of claimants with plaintiff's age, education, and experience who are found to have such capacity would not be entitled to disability benefits, it is likewise clear that the Secretary's position was substantially justified in its application of the law to the facts alleged.

In conclusion, I find that the position taken by the Secretary in this case was substantially justified in law and in fact. I will therefore deny plaintiff's petition for attorney's fees under the EAJA.