John E. WASHINGTON, Appellant,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Appellee.

No. 83–1937.

United States Court of Appeals, Third Circuit.

Argued Dec. 6, 1984.

Decided March 6, 1985.

Aldisert, Chief Judge, filed concurring opinion.

Stern, District Judge, sitting by designation, filed concurring opinion.

James M. Lafferty, David A. Searles (argued), Community Legal Services, Inc., Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Edward T. Ellis, Asst. U.S. Atty., E.D. Pa., Michael Leonard (argued), Dept. of Health and Human Services, Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, BECKER, Circuit Judge, and STERN, District Judge.*

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by John E. Washington, a social security disability claimant, who became a "prevailing party" against the United States within the meaning of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (1982) (repealed 1984), when the district court reversed an adverse decision of the Secretary of Health and Human Services (the "Secretary") and directed an award of benefits.[1]  Washington's disability had ended in August 1980. He appealed that decision (without the assistance of legal counsel) and exhausted his administrative remedies, including a hearing and decision by an Administrative Law Judge ("ALJ") and a final decision by the Appeals Council, without success. Thereupon, Washington, with representation of counsel, filed a timely action,

---

* The Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

1. Washington originally applied on January 25, 1978, for supplemental security income ("SSI") based on disability. The Social Security Administration ("SSA") found that he was disabled. Thereafter, the SSA concluded that Wash-

ington was unsuccessful, however, in obtaining an award of counsel fees under the EAJA because the district court decided that the position taken by the Secretary both in the agency and in the district court was substantially justified. There are no disputed facts before us and the sole question for review is whether, on the administrative record, the Secretary has met her burden of showing substantial justification for her agency and litigation positions. We conclude that, in such circumstances, our scope of review is plenary. We also conclude that the position of the Secretary was not substantially justified; hence we will reverse and remand for an award of attorney's fees.

## I.

■ The law applicable to a determination of entitlement to EAJA attorney's fees has been oft-repeated and may be succinctly stated. A party is entitled to attorney's fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. 2412(d)(1)(A) (1982). The position of the United States includes not only its litigation position but also the agency position that made the lawsuit necessary. *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 708 (3d Cir.1983); *Dougherty v. Lehman*, 711 F.2d 555, 563 n. 12 (3d Cir.1983). Substantial justification "constitute[s] a middle ground between an automatic award of fees to a

prevailing party and an award made only when the government's position was frivolous." *Dougherty*, 711 F.2d at 563. *See also Natural Resources Defense Council, Inc. v. EPA*, 703 F.2d at 708, 711 (opinion announcing the judgment of the court); *id.* at 714–15 (concurring opinion); *id.* at 719 (concurring and dissenting opinion). The burden of proving substantial justification is on the government. *Dougherty*, 711 F.2d at 561. To meet its burden, the government must show: (1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounds; and (3) a reasonable connection between the facts alleged and the legal theory advanced. *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 593 (3d Cir.1984); *Dougherty*, 711 F.2d at 564. The government's burden of showing substantial justification is a strong one and is not met merely because the government adduces "some evidence" in support of its position. *Tressler v. Heckler*, 748 F.2d 146, 150 (3d Cir.1984).

■ The case law has not prescribed a comprehensive formula for determining what constitutes a reasonable basis in law. As *Dougherty* makes clear, there is no *per se* rule that imposes counsel fees on the government when it loses merely because its legal theory is rejected.[2] *Dougherty*, 711 F.2d at 566. If, for example, the case turns on an unsettled or "close question of law," *id.*, the government usually will be

pursuant to 42 U.S.C. § 405(g) and § 1383c(3), in the United States District Court for the Eastern District of Pennsylvania. Following the submission of cross-motions for summary judgment, the case was referred to a United States Magistrate for a report and recommendation. The Magistrate recommended that Washington's motion for summary judgment be granted and that the Secretary's motion for summary judgment be denied. On May 12, 1983, the district· court approved and adopted the report and recommendation of the Magistrate as the opinion of the court, remanding the case to the Secretary with the direction that appellant's SSI benefits be reinstated.

2. *But see, Washington v. Heckler*, at 969 (Aldisert, C.J., concurring) (concluding that where the court determines that the agency action is not supported by substantial evidence, the agen-

cy action is not substantially justified under the EAJA as a matter of law, except where extraordinary circumstances are shown). Although we concede its desirability on policy grounds, because it creates a clear, simple rule, we conclude that the rule advocated by Chief Judge Aldisert has been foreclosed by prior decisions. *See, e.g., Tressler v. Heckler*, 748 F.2d at 149.

We also note that the post-enactment legislative history, upon which Chief Judge Aldisert relies in proposing his test, is itself ambiguous as to the proper standard for substantial justification. The House Report indicates, for example, that "[t]he Committee expects that the determination of what is 'substantially justified' will be decided on a case-by-case basis due to the wide variety of factual contexts and legal issues which make up government disputes." H.R.Rep. No. 98–992, 98th Cong., 2d Sess. 7 (1984).

able to establish that its legal theory was "reasonable," even if it was not ultimately accepted as a legal rule by the courts. When the government's legal position clearly offends established precedent, however, its position cannot be said to be "substantially justified."

## II.

As yet, few courts of appeals have devoted detailed consideration to the scope of review of district court determinations of substantial justification. The most comprehensive discussion thus far appears in *Spencer v. NLRB*, 712 F.2d 539, 561–65 (D.C.Cir.1983). The *Spencer* court, noting the lack of guidance in the statute itself as to the proper standard and the dearth of legislative history on this point, sought insight from both the general principles governing appellate review of district court judgments in civil nonjury cases and the objectives underlying the EAJA. *Id.* at 563.

### A.

Disposing first of basic propositions, the *Spencer* court concluded, as has this court, *see In re Fine Paper Antitrust Litigation,* 751 F.2d 562, 584 (3d Cir.1984), that any findings of fact made by a trial judge in the course of ruling on a petition for attorney's fees are subject to review under the "clearly erroneous" standard of Fed.R.Civ.P. 52(a);[3] that the judge's conclusions on questions of law are subject to plenary review; and that determinations deriving from the application of legal standards to the facts of the case are also subject to plenary review. We agree with *Spencer* on these points.

Turning to the more difficult question, and that relevant here, the *Spencer* court held that determinations of whether a particular interpretation of the law is plausible or colorable were to be regarded as conclu-

sions of law and reviewed as such. In support of this holding, Judge Edwards stated:

> It would appear that, if anything, the special expertise and experience of appellate courts in assessing the relative force of competing interpretations and applications of legal norms makes the case for *de novo* review of judgments of this order even stronger than the case for such review of paradigmatic conclusions of law. Any uncertainty we might have regarding the appropriate classification of rulings of this kind is alleviated by consideration of the central purpose of the EAJA. The disincentive to challenge unreasonable governmental action caused by fear of incurring large litigation expenses will be significantly reduced only if potential litigants are able to predict reasonably accurately whether they ultimately will be able to recover their attorneys' fees. Their ability to make such predictions, in turn, is dependent on the *consistency* with which the EAJA is interpreted—*i.e.*, with which the justifications for (losing) legal arguments are assessed. Nondeferential appellate review of such assessments will best achieve a goal of consistency and thus enable the Act more effectually to serve its intended social functions.

712 F.2d at 563–64 (footnote omitted) (emphasis in the original). We also agree with this reasoning.

### B.

Because the facts surrounding the controversy in *Spencer* were undisputed, *see id.* at 567, the court did not have to decide the scope of review of EAJA decisions where the issue is the district court's evaluation of the plausibility of the government's factual position. In dicta, however, the court reasoned that such judgments are more properly classified as factual findings, subject to clearly erroneous review

---

**3.** The typical fact finding in counsel fee cases relates to "lodestar" calculations of the number of hours actually expended on a case, or of a reasonable hourly rate for counsel. We have also identified a number of discretionary rul-

ings reviewable by an abuse of discretion standard, *e.g.*, the amount of a quality multiplier. *See In re Fine Paper Antitrust Litigation,* at 589–590.

because "they involve the same kind of evaluation of the credibility of witnesses and weighing of evidence entailed by ordinary findings of fact—and at which trial judges are especially experienced and skilled." *Id.* at 564. Although the facts in this appeal, as in *Spencer*, are not disputed, we are squarely presented with this question in the companion case of *Dennis v. Heckler*, 756 F.2d 971 (3rd Cir.1985), where we focus on the Secretary's factual position. The government contends that the standard of review in such cases should be clearly erroneous.

█ In concluding that judgments concerning the government's characterization of the underlying facts should be subject to clearly erroneous review, the *Spencer* court was apparently assuming that the district court would have an opportunity to evaluate the credibility of witnesses and to weigh the evidence. In both *Dennis* and the instant appeal, however, the district court is performing precisely the same function of reviewing the Secretary's factual and legal position as we perform. Because there is no qualitative difference in the method of the two reviews, we find that there is no reason to defer to the judgment of the district court and therefore conclude that the plausibility of the factual as well as legal basis of the government's position is subject to plenary review.[4]

We now turn to an analysis of the facts of record and then to the discussion of whether the government's position was substantially justified.

### III.

### A.

It is undisputed that Washington, a fifty-three year old man with an eighth grade education, has a serious low back condition. After a myelogram revealed a defect at L5, a lumbar laminectomy and nerve root decompression was performed in May 1978 to correct a disc condition. However, John L. Sbarbaro, M.D., an orthopedic surgeon who examined Washington on behalf of the Secretary, reported in October 1979 that Washington had not improved since his surgery and that he had "dramatic stiffness in his low back [which] is characteristic of either a degenerative process or a chronic inflammatory process of the lower back." Administrative Record at 134. Dr. Sbarbaro noted that Washington appeared to be in constant pain and concluded that he "may well be permanently disabled." *Id.* B. Thakarar, M.D., an orthopedic surgeon who also examined Washington on behalf of the Secretary, reported in August 1981 that Washington had chronic arachnoiditis and degenerative joint disease, and that he was restricted from any activities that require movement of the cervical and lumbar spine area, including pushing, pulling, bending, and prolonged sitting, standing, and walking. *Id.* at 178. Even Dr. Martin Blaker, the orthopedic surgeon most relied upon by the Secretary, reported in August 1980 that Washington should restrict activities affecting the lower back. *Id.* at 139.

There is also undisputed evidence that Washington suffers from a serious emotional disorder. Lance S. Wright, M.D., a psychiatrist, examined Washington on behalf of the Secretary and reported on September 13, 1981, that his mental status examination revealed that Washington's affect was "flat to depressed," that he claimed suicidal ideations (though he had never made any attempt), and that he suffered, *inter alia*, from recurrent depression and alcohol abuse. *Id.* at 184. Dr. Wright indicated that Washington's prognosis was "poor." *Id.* There was countervailing evidence about Washington's emotional condition in the form of a psychological report submitted under the auspices of Napoleon Vaughn, Ed. D., but prepared and signed by one E. Meinhart, a "psychologist's assistant." This report contains a history and the results of a clinical interview and psychological testing, and con-

---

4. We leave open the question of the appropriate scope of review where the district court has actually taken testimony and evaluated the credibility of witnesses.

cludes in a section marked "Recommendations" that:

> The psychological testing does not find Mr. Washington warrants Social Security Benefits. His intelligence falls within the normal range. There is no organicity. Granted, reading, spelling and arithmetic categorize him as an academic cripple, but he does manage his funds, pay bills, etc., without being cheated out of his money.
>
> A psychiatric evaluation is strongly recommended for this claimant.

*Id.* at 175.

### B.

The ALJ conducted a hearing at which he received the medical records and the testimony of Mr. Washington. The ALJ did not call a vocational expert. Washington testified that he only completed the eighth grade in school, that his work history consisted primarily of doing handiwork (painting and paperhanging) and that he had not worked at all since 1976 when he injured his back. He complained of constant low back and leg pain which had not been improved by surgery (he testified that he uses a cane when he walks inside his house, but that he is afraid to use the cane when walking outside), and stated that he drinks to relieve his pain. Washington also testified about his psychological history, relating that he went to a psychiatrist several times in the late 1970's because he was depressed and suicidal. He claimed still to have depression and to think occasionally about suicide.

The ALJ agreed that Washington could not return to his former occupation, *see id.* at 13, and conceded that, if credited, Washington's testimony would be consistent with a finding that he was physically unable to work at all.[5] *Id.* at 11. However, the ALJ determined that the testimony should not be credited. First, he reasoned that the orthopedic evidence did not document a condition that would account for Washington's claimed severe pain. *Id.*

The ALJ also opined that Washington was not a credible witness because he had changed his testimony to avoid the conclusion that he could perform work permitting alternating sitting and standing, *e.g.,* the job of a tailor, for which he might be retrained. *Id.* at 12. Thus the ALJ found that Washington could perform a wide range of sedentary work. *Id.* at 13. With respect to the psychiatric evidence, the ALJ concluded that it did not establish an impairment that "significantly limits the range of light work the claimant can do." *Id.* The ALJ stated that:

> [Washington's] intelligence is dull normal and there is no evidence of brain damage due to alcohol or any other cause. He is depressed and ruminates on his physical problems, which demonstrates a constriction of interests and may indicate some resulting limitation of daily activities, but the deterioration in personal habits and relationships which evidence [sic] severe depression has not been documented. Moreover, for the reasons set forth above, I do not believe that the claimant is as depressed as he claims. There is no evidence that he cannot control his drinking or that it has caused functionally limiting physical or mental damage.

*Id.*

On the basis of these findings, the ALJ applied the Medical-Vocational Guidelines, 20 C.F.R. § 404, Subpart P, Appendix 2 ("the grids"):

> As of August 1980 the claimant's factors of age, education, work experience and residual functional capacity are the same as those in Rule 202.17 in Appendix 2 of Subpart P of 20 C.F.R. 404, which directs a decision of not disabled (and after the claimant's 50th birthday, all criteria of Rule 202.10, which also directs denial, are met).

Administrative Record at 14. The ALJ therefore concluded that Washington was not precluded by any medically determinable impairment from engaging in all sub-

---

**5.** The ALJ concluded that Washington's impairments did not meet the criteria of the listing of Impairments. 20 C.F.R. § 404, Subpart P, Appendix 1. *See* Administrative Record at 12–13.

stantial gainful work activity and, hence, was not disabled. *Id.*

## C.

The United States Magistrate, to whom the case was referred by the district court, reviewed the medical evidence and determined on a number of grounds that Washington's motion for summary judgment should be granted and the case remanded to the Secretary with a direction to reinstate his SSI benefits. First, citing *Baykara v. Harris,* 696 F.2d 980 (3d Cir.1982) (unpublished opinion), the Magistrate concluded that the ALJ had disregarded without a thorough explanation an uncontradicted medical report, submitted by a physician selected by the Social Security Administration (Dr. Thakarar), that was highly favorable to the claimant. The Magistrate also observed that the ALJ had substituted his own expertise for that of the examining physicians in violation of *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.1979). He thus concluded that the Secretary's finding that Washington was able to perform light work was arbitrary and not supported by substantial evidence.[6] Appendix at 59.

With respect to the psychiatric evidence, the Magistrate concluded that the ALJ had again unfairly discounted, without explanation, competent medical evidence submitted by the Secretary's own physician. Specifically, the Magistrate concluded that the ALJ had improperly ignored Dr. Wright's diagnoses that plaintiff suffers from a major affective disorder, recurrent depression, and postoperative residual pain, and had once again employed his own lack of expertise to conclude that Washington's mental limitations impose " 'no significant functional restrictions'." *Id.* at 60. Additionally, and most importantly, the Magistrate noted that:

> having found that plaintiff suffered from depressive reaction, a nonexertional impairment, the Secretary was directed by the Regulations to make his determination of disability in "full consideration ... [of] all of the relevant facts in the case", 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2), and not in strict accordance with the Medical-Vocational Guidelines which he did. *Burnam v. Schweiker,* 682 F.2d 456 (3d Cir.1982). *See Santise v. Schweiker,* 676 F.2d 925, 934–35 (3d Cir.1982) (guidelines " 'may not be fully applicable' where a claimant suffers from non-exertional, instead of or in addition to exertional, impairments").

*Id.* at 61.[7]

The district court adopted the Magistrate's report and recommendation and remanded the case to the Secretary with the instruction that SSI benefits be reinstated.[8] *Id.* at 49.

## IV.

The district court addressed Washington's timely petition for counsel fees under the EAJA in a comprehensive and thoughtful opinion. *Washington v. Heck-*

---

**6.** As we have explained, the ALJ based his determination of nondisability on the Medical-Vocational Guidelines in Appendix 2 of the Regulations, specifically Rule 202.10. Had the ALJ found the plaintiff to be capable of only sedentary work, Rule 201.09 would have directed that the plaintiff be found to be disabled.

**7.** The Magistrate also concluded that the ALJ had "unfairly and without any basis" stated in his decision that the signs and findings in the medical evidence do not document that the neck and back impairments are extensive enough to cause the severe and varied symptoms Washington claims. Appendix at 61–62. The Magistrate pointed to settled precedent in this circuit that " '[t]estimony of subjective pain and inability to perform even light work is entitled to great

weight, particularly when, as here, it is supported by competent medical evidence.' " *Id.* at 62 (quoting *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979)). *See also Podedworny v. Harris,* 745 F.2d 210, 217 (3d Cir.1984).

**8.** Although this is a "termination" case in which a medical improvement standard was not applied, the district court's order entered on May 12, 1983, preceded this court's decision in *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983), filed on August 18, 1983, announcing a medical improvement standard. In determining whether the government's position is "substantially justified," it is only fair that we consider that position in relation to the law as it stood at the time that the district court originally resolved the merits of the case.

*ler*, 573 F.Supp. 1567 (E.D.Pa.1983). The court summarized the relevant medical evidence and the standard announced by this court in *Dougherty v. Lehman*, 711 F.2d 555 (3d Cir.1983), noting that, under *Dougherty*, a finding that the underlying agency ruling was not supported by substantial evidence does not necessarily indicate that the position asserted by the government lacks a substantial basis. The court then proceeded to review the medical evidence according to the *Dougherty* standard. 573 F.Supp. at 1570–71.

First, the district court relied upon the report of Dr. Vaughn to hold that the Secretary had a reasonable basis in fact for her contention that Washington suffered no significant non-exertional impairment.[9] *See id.* at 1571–72.

While viewing the question of Washington's physical impairments as more serious, the court was persuaded that sufficient evidence existed to support the Secretary's conclusion that Washington was capable of performing light work.[10] *Id.* at 1572. Finally, the district court decided that the Secretary's legal theory was substantially justified, and that the facts alleged by the Secretary reasonably supported her legal theory. *Id.* at 1573.

In this appeal, Washington argues that the Secretary's refusal to award disability benefits cannot be deemed "substantially justified," because, *inter alia*, the Secretary failed to evaluate his exertional and non-exertional impairments together, in violation of *Burnam v. Schweiker*, 682 F.2d 456 (3d Cir.1982). The district court's only consideration of this issue was as follows:

Although I recognize that in an appropriate case the Secretary's reliance upon exertional impairment criteria to defend her denial of benefits to a claimant afflicted by a nonexertional disorder might not satisfy her burden under the substantial justification test, this is not such a case. The evidence of plaintiff's psychological stability submitted to the ALJ through the reports of Dr. Vaughn and Dr. Wright was certainly sufficient to provide the Secretary with substantial justification for her assertion that the exertional impairment criteria should apply to plaintiff's claim.

573 F.Supp. at 1573.[11]

## V.

■ As the district court found in the underlying case, the ALJ erred in applying the grids to Washington's disability determination. The Supreme Court held in *Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), that the Secretary may use the grids to determine whether jobs exist in the national economy that a person with the claimant's qualifications and limitations could perform. In order to show that a claimant is able to engage in alternative gainful employment, however, the Secretary must first show that a claimant's vocational profile is precisely contained within the guidelines established for each rule of the grid. *See Santise v. Schweiker*, 676 F.2d 925 (3d Cir.1982); 20 C.F.R. Part 404, Appendix 2, § 200.00(d). The grids will be of limited help when a "claimant suffers from non-exertional, instead of or in addition to exertional impairments." 676 F.2d at 934–35; 20 C.F.R. Part 404, Appendix 2, § 200.00(e).

9. The district court refers to Dr. Vaughn as a "psychologist," 573 F.Supp. at 1571, although Dr. Vaughn's actual title is Ed. D., and Dr. Vaughn's assistant apparently performed the examination and prepared the report.

10. The district court relied upon the reports of Dr. Blaker and Dr. Thakarar, which contained some evidence that Washington had a significant range of motion in his lower back.

11. Washington also argues that (1) the ALJ improperly discounted competent medical evi-

dence and substituted his own lay opinion for the expertise of the examining physician; and (2) the Secretary misapplied the law on the burden of persuasion in a disability cessation case. We need not consider the former argument for *Burnam* is dispositive of this appeal. The latter argument asks that we analyze the government's legal position in light of legal changes that occurred after the litigation of the merits of the social security claim in district court. We have rejected this approach. *See supra* note 8.

And, where a claimant has both exertional and non-exertional impairments, the ALJ must evaluate them together to determine whether a claimant who suffers from a combination of these is disabled. *Burnam v. Schweiker*, 682 F.2d 456, 458 (3d Cir. 1982).[12]

■ Because the grids themselves do not justify a conclusion as to disability, when there are both exertional and non-exertional impairments, the Secretary must rely upon some other supporting evidence in the record to demonstrate that the claimant can perform work available in the national economy. The ALJ did not call a vocational expert who might have considered the full scope of Washington's impairments and evaluated whether a person with Washington's exertional *and* non-exertional impairments could perform general light work available in the national economy. Rather, notwithstanding the presence of both serious exertional and non-exertional impairments, the ALJ simply applied the grids. This action is in violation of *Burnam*.[13]

■ The Secretary contends, however, that "[w]here impairments result in both strength and nonexertional limitations ... the [grids] are not completely disregarded." Supplemental Letter Brief of Appellee, at 6.[14] The Secretary submits that *Burnam* does not preclude the use of the grids as a "framework" for determining the extent to which a non-exertional limitation may further diminish work capacity, and, therefore, that the Secretary's position in this case was substantially justified. We need not resolve the merits of this "framework" approach as a general matter, because, given the Secretary's failure to present any evidence of Washington's ability to work independent of the prescriptions of the grids, a finding that appellant was not disabled is simply contrary to this Court's precedent extant at the time Wash-

**12.** As we stated in *Burnam,* "the fact that work exists in the national economy for a person who *only* has [the claimant's] exertional impairments, or for a person who *only* has [the claimant's] nonexertional impairments, does not mean that work exists in the national economy for a person who suffers from *both* types of impairment simultaneously." 682 F.2d at 458 (emphasis in the original).

**13.** In two more recent cases, we have reaffirmed the holding of *Santise* and *Burnam* that it is improper for an ALJ first to consider a social security disability claimant's exertional impairments, next to apply the grids to determine that the appellant was not disabled, and then to reevaluate the non-exertional impairments to consider whether they require a revised conclusion. *See Wallace v. Secretary of Health and Human Services,* 722 F.2d 1150 (3d Cir.1983) (improper for ALJ to rely on single disability grids when appellant had both psychological and physical impairments); *Green v. Schweiker,* 749 F.2d 1066, 1071–1072 (3d Cir. 1984) (improper for ALJ to apply grids where non-exertional complaints were at issue).

**14.** More specifically, the Secretary argues that:
Both exertional and nonexertional limitations are subject to consideration under the Secretary's medical-vocational regulation. When a nonexertional limitation is present, the rules set forth in Appendix 2 "may not be fully applicable". 20 C.F.R. Part 404. Subpart P, App. 2, § 200.00(e) (1984). Where impairments result in both strength and nonexertional limitations, however, the rules are not completely disregarded. Rather, in such a situation:
[t]he rules in this subpart are considered in determining first whether a finding of disabled [sic] may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience *provide a framework for consideration of how much the individual's work capacity is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional impairment.* Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case is [sic] accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative [sic] weight to be accorded each factor.
*Id.* (emphasis added). This regulatory provision was quoted with approval in *Burman [sic] v. Schweiker,* 682 F.2d 456, 457 (3d Cir. 1982).
Supplemental Letter Brief of Appellee, at 6 (footnotes omitted).

ington's disability determination was made.[15]

## VI.

It is plain from the foregoing discussion that the Secretary's position both in the agency and the district court[16] clearly offends our established precedents. As such it has no reasonable basis and is not substantially justified. Accordingly, the judgment of the district court will be reversed and the case remanded for determination of an appropriate fee under the EAJA.

ALDISERT, Chief Judge, concurring.

At the turn of the century, the great master Holmes gave a definition of law: "The prophecies of what the court will do in fact, and nothing more pretentious, are what I mean by the law." Holmes, *Path of the Law*, 10 Harv.L.Rev. 457, 460–61 (1897). This observation is as viable today as when Holmes first uttered it. Predictability in the law, or in Karl Llewellyn's phrase, "reckonability," must exist so that private persons and public agencies, the legal profession, and trial courts may be able to plan affairs accordingly, give proper advice, and decide cases in accordance with reasonably understandable principles.

A dispassionate examination of the interpretations of the Equal Access to Justice Act (EAJA) clause disallowing recovery of attorney's fees payments from the United States when the government is "substantially justified," 28 U.S.C. § 2412(d)(1)(A), convinces me that there is neither predictability nor reckonability to the case law. In the final analysis, notwithstanding reams of writing and analysis, this single phrase, "substantially justified", comes down to this: the clause means only what a particular judge wants it to mean. To draw upon an old analogy, we are deciding

attorney's fees cases "on the length of the chancellor's foot."

Much discussion in this court's opinions seeks to find a foothold on the slippery slopes, but the bottom line seems to be that we always reverse denials of attorney's fees. I can appreciate the frustrations of the district courts, who justifiably can ask, "Do we do what the Court of Appeals *does*, or what it *says*?"

Distilled to its essence, the following are the few principles we have to guide our decisions:

1. The United States' position is evaluated by its posture before the agency as well as before the court. *Natural Resources Defense Council v. United States Environmental Protection Agency*, 703 F.2d 700, 706–12 (3d Cir.1983).

2. Substantial justification is a middle ground between an automatic award to the prevailing party and an award made only when the government's position was frivolous. *Id.* at 719 (Hunter, J., concurring and dissenting).

3. The government has a strong burden of proving substantial justification; this burden is not satisfied because the government can point to "some evidence" in its favor. *Id.* at 712.

*See also Tressler v. Heckler*, 748 F.2d 146 (3d Cir.1984); *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584 (3d Cir.1984); *Dougherty v. Lehman*, 711 F.2d 555 (3d Cir.1983). Whatever value these statements have in other cases, I find they provide little direction on how to decide the attorney's fees question when the claimant prevails because the court finds that no

---

**15.** The government does not indicate how the "framework" approach it suggests would be applied to specific claims of disability. Thus, we do not know whether *Burnam* and its progeny absolutely preclude the government's suggested approach. In this case we need not decide whether, for example, the Secretary may use the prescriptions of the grids, which would apply in the absence of both exertional and non-exertional impairments, to add weight to the testimony

of a vocational expert indicating that an individual was not disabled. We decide only that *Burnam* expressly precludes a finding of disability that is based solely on the grids when there are significant exertional and non-exertional impairments.

**16.** The Secretary persisted in her position throughout the court proceedings.

substantial evidence supports the Secretary's position.

Probably the most unfortunate aspect of this problem is that litigation continues to fulminate and opinions to disseminate, even though the Equal Access to Justice Act has expired and we are awaiting a new Congressional and Executive mandate. Conscious that we are dealing with an expired statute, and based on the bottom line dispositions of this court in Social Security cases, I advocate one single test by which a court may grant attorney's fees to a Social Security claimant on the ground that there was no substantial evidence on the record supporting the Secretary's position. I would hold as a matter of law that, absent truly extraordinary circumstances, in each such case the position of the United States was not substantially justified. I generally would obey the admonition of *Dougherty* prohibiting automatic awards in most attorney's fees cases, but nevertheless carve out a neat exception in the typical substantial evidence case.

I think that such a rule would make sense, would provide explicit direction, and would avoid unfortunate decisions where, as in this case, the majority opinion makes a scholarly and analytical justification of its position, notwithstanding an equally scholarly and analytical opinion of the district court that takes a contrary view. As it stands today, "substantially justified" is too amorphous, too fluid, and too devoid of direction to guide the legal profession and the courts in cases where the claimant prevails because no substantial evidence in the record sustained the agency's position.

The nature of the problem really admits to no other solution. If the claimant wins because a court determines as a matter of law that there was not substantial evidence, there can be no gradations to his or her victory. I cannot parse this legal determination in metaphysical terms. I do not find myself able to say, for example, that in given cases, there was almost substantial evidence, but we cannot find it, or that the question is close but we decide that the evidence was not there, or that

only a wee bit of the evidence existed, but not enough. The legal profession and our judicial tradition are disserved when a court's analysis begins with a lack of evidence determination and then proceeds by rationalization, and not ratiocination, to try to explain when the claimant may or may not obtain attorney's fees.

Although I offer this as my own solution to a vexing problem, I do so with full recognition that this view is supported by the Judiciary Committee of the House of Representatives, the committee that served as the principal sponsor of the Equal Access to Justice Act when it first was introduced in Congress. I also am quick to recognize that the views of the committee to which I am about to refer are post-enactment views and therefore do not have the same bite as pre-enactment statements. I am aware, for example, of the explicit language of the Supreme Court discussing "subsequent legislative history":

> But post-passage remarks of legislators, however explicit, cannot serve to change the legislative intent of Congress expressed before the Act's passage. See, e.g., *United States v. Mine Workers of America*, 330 U.S. 258, 282 [67 S.Ct. 677, 690, 91 L.Ed. 884] (1947). Such statements "represent only the personal views of these legislators, since the statements were [made] after passage of the Act." *National Woodwork Manufacturers Assn. v. NLRB*, 386 U.S. 612, 639 n. 34 [87 S.Ct. 1250, 1265 n. 34, 18 L.Ed.2d 357] (1967).

*Regional Rail Reorganization Act Cases*, 419 U.S. 102, 132, 95 S.Ct. 335, 353, 42 L.Ed.2d 320 (1974).

What is especially important, however, is that nothing in the original legislative history of the EAJA contradicts what was contained in the later report of the committee chaired by Congressman Robert Kastenmeier, who also chaired the original subcommittee of the Judiciary at the time the EAJA was enacted into law. I believe that the originating committee's views cannot be ignored when its post-enactment explanatory statements do not contradict, but

merely clarify, pre-enactment congressional intention. In reporting out the 1984 amendments to the Act (later passed by Congress but vetoed by the President for other reasons), the House Judiciary Committee commented on judicial activity interpreting "substantially justified":

> Especially puzzling, however, have been statements by some courts that an administrative decision may be substantially justified under the Act even if it must be reversed because it ... was not supported by substantial evidence. *Agency action found to be ... unsupported by substantial evidence is virtually certain not to have been substantially justified under the Act.* Only the most extraordinary special circumstances could permit such an action to be found to be substantially justified under the Act.

H.R.Rep. No. 992, 98th Cong., 2d. Sess. 7 (1984) (emphasis supplied) (footnote omitted).

Moreover, Justice Rehnquist has reminded us that

> [t]he report of a joint conference committee of both Houses of Congress, for example, or the report of a Senate or House committee, is accorded a good deal more weight than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber. See *e.g., Chandler v. Roudebush*, 425 U.S. 840, 858 n. 36 [96 S.Ct. 1949, 1958 n. 36, 48 L.Ed.2d 416] (1976); *United States v. Automobile Workers*, 352 U.S. 567, 585–586 [77 S.Ct. 529, 538, 1 L.Ed.2d 563] (1957).

*Simpson v. United States*, 435 U.S. 6, 17, 98 S.Ct. 909, 915, 55 L.Ed.2d 70 (1978) (Rehnquist, J., dissenting).

I mention the authority of Congressman Kastenmeier's committee report only to buttress my solution to this problem, and not as an attempt to suggest that the post-enactment legislative history compels the result, given the Supreme Court's discussion in the *Regional Rail Reorganization Act* cases. I believe that this formula will bring stability and predictability to the law, serve a valid public purpose, and avoid highly abtruse and abstract judicial decision making.

For these reasons, because the claimant was successful on the substantial evidence issue, and finding no exceptional circumstances, I concur in the court's judgment.[1]

STERN, District Judge, concurring:

The question is not whether the Agency's position was supported by substantial evidence. It was not. The issue is whether there was a reasonable basis—substantial justification—to litigate that question. The misfortune here is semantic. The two tests, one for prevailing on the merits, and the other for awarding counsel fees, use similar language: "substantial evidence," "substantially justified." But one test refers to a burden of proof, and the other to the reasonableness of litigating. If we keep this difference squarely in mind, I believe that much of the confusion evaporates. Moreover, with all due respect to Congressman Kastenmeier, I do not see how it is even possible to merge these two very different tests. One determines the outcome. The other determines the justifiability of having litigated to reach that outcome.

Chief Judge Aldisert's appeal for rationality and predictability is timely and welcome. The need for clarity and certainty in appellate decisionmaking is too obvious to trial judges, lawyers and potential litigants to warrant embellishment from me. But timely, too, is the reminder that the Congressional Record is no place to seek clarity or certainty in the hunt for the congressional will. It is well known that the Congressmen and Senators reserve to themselves the right to remove from the Record the words they actually said to one another before the passage of legislation, and to add into the Record—after the passage of the bill—words that were never said at all.

---

1. I agree with the majority that interpreting the statutory phrase "substantially justified" is a question of law for which there is plenary review.

We in the courts and everyone in the country do not have a fair chance to do what the Congress says it wants us to do, because we can simply never be sure they said the things they say they said.