**Verla McKINNON**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services.**

Civ. A. No. 85–4622.

United States District Court, E.D. Pennsylvania.

Dec. 30, 1986.

Jeffrey L. Greenwald, Lehigh Valley Legal Services, Easton, Pa., Jeffrey L. Greenwald, for plaintiff.

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

### MEMORANDUM

JOSEPH S. LORD, III, Senior District Judge.

Plaintiff McKinnon commenced this action in August of 1985 to review a decision by the defendant Secretary denying her application for Social Security Disability Insurance benefits. Cross motions for summary judgment were filed on June 11, 1986. Magistrate Richard A. Powers, III recommended that the plaintiff's motion for summary judgment be granted. I adopted the Magistrate's Report and Recommendation. The matter was remanded to the Secretary for an award of benefits.

■ Plaintiff now moves for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (Supp. III 1985) ("EAJA"). Under EAJA, plaintiff is entitled to attorney's fees unless the government's litigation position and the agency action that made the lawsuit necessary were "substantially justified." *Washington v. Heckler*, 756 F.2d 959, 961 (3d Cir. 1985). To meet the burden of establishing substantial justification, the government must make a strong showing that there was: "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounds; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Id.*

■ Plaintiff points to three key areas where the government's position was not "substantially justified." First, the plaintiff argues that defendant ignored clear precedent by rejecting the opinions of the treating physicians. The Secretary's position is that adequate justification was offered.

At the hearing, plaintiff testified to experiencing, *inter alia*, burning chest pains, and arrhythmic contractions and attacks that made her feel as if she would pass out. Treating physician Dr. Quilo reported that plaintiff suffers from angina and arrhythmia secondary to coronary artery spasm. The Administrative Law Judge ("ALJ"), and the Secretary in his brief for summary judgment, severely discounted the doctor's statements because "*all* of the other medical records and reports reveal that [plaintiff] consistently denied any chest pain, and ... Dr. Quilo's statement [concerning] ar-

rhythmia secondary to coronary artery spasm is inconsistent with, and contradicted by, *all* of the other medical evidence of record." Tr. 12 (emphasis added).

This is both an indefensible and an incredible position. In fact, both of plaintiff's other doctors, and the government's doctors, acknowledged both the chest pain and the arrhythmia. A treating cardiologist presented a diagnosis of "transient ischemic attacks, ... complaints of recurrent ... chest pain ... [and] evidence of complex ventricular arrhythmia requiring ... medication." Tr. 280. Government witness Dr. Miller acknowledged "a history of cardiac cerebrovascular disease with transient ischemic attacks" and "definite[ ] exhibit[ions] of cardiac arrhythmia, showing premature ventricular contractions...." Tr. 222–23. He also detailed a "history of cardiac disease as manifested by chest pain," and a history of "documented arrhythmia." Tr. 226. Dr. Miller did not discuss the cause of the arrhythmia. Examination by the other government doctor revealed an "[i]rregular heart rate and rhythm with frequent premature beats." Tr. 258. This doctor concluded that plaintiff's impairments included "cardiac arrhythmias associated with some atypical chest pain." Tr. 259.

The statement in the ALJ's report, quoted in the government's brief, is nothing more nor less than a willful misstatement, calculated to give surface validity to another callous denial of merited benefits and cavalier disregard of court rulings. Under Third Circuit precedent, the ALJ improperly rejected the testimony of the treating physician. More specifically, before the "opinion and evidence [of a treating physician] can be rejected the Secretary must point to some other evidence contradicting it." *Rossi v. Califano*, 602 F.2d 55, 58 (3d Cir.1979). Here, as outlined, the ALJ and Secretary purportedly relied upon "inconsistent and contradictory" medical records. However, the other records tended to substantiate, rather than undermine, the findings of the treating physician. The Magistrate found, and this court agreed, that the ALJ failed to accord proper weight to the reports of the treating physicians. Although the mere fact that the government's position was rejected does not automatically mean it was unreasonable, *see Washington v. Heckler, supra,* 756 F.2d at 961, the record here reveals that, on this crucial issue, the government's rationale for rejecting the treating physician's position was unreasonable, as there was clearly "no reasonable basis in truth" for the ALJ's rejection of the treating physician's opinion.

A second instance in which the government's position is not "substantially justified" concerns the questions posed to the vocational expert. The ALJ failed to pose hypotheticals which included restrictions resulting from plaintiff's subjective symptoms. The ALJ and the Secretary argue that the hypotheticals posed properly accounted for plaintiff's objectively substantiated symptoms.

The Secretary's position is again at odds with the Third Circuit standard, which requires that: (1) "subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; [ (2) ] when such complaints are supported by medical evidence, they should be given great weight; [and (3) ] where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence." *See, e.g., Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985) (citations omitted).

Here, as the Magistrate found, plaintiff's complaints of pain "are reasonably supported by the medical evidence. There is nothing to contradict the testimonial evidence or the medical reports of the treating physicians." Magistrate's Report and Recommendation at 12. As the discounting of plaintiff's pain was flawed, so were the hypotheticals the ALJ posed to the vocational expert. "A vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for the purposes of determining disability" if the hypothetical questions accurately portray the claimant's "particular impairments as contained in the record." *Podedworny v. Harris,* 745 F.2d 210, 218

(3d Cir.1984). In this instance, not only was the government's position not supported by substantial evidence, but also there was no reasonable basis for the government's position.

On one final issue, the government's position was "substantially justified." Plaintiff argues that the ALJ improperly "relied on" the grids,[1] notwithstanding the fact that this case involved significant nonexertional impairments. The government argues the ALJ merely used the grids as a framework.

The Magistrate concluded that the ALJ "relied on" the grids. However, the ALJ explicitly found that the plaintiff's condition "does not specifically coincide with any of the [grids]," and that the grids do not direct the result in this case. Tr. 16. The ALJ then discussed the two grids that most closely fit the plaintiff and, in conjunction with the testimony of the vocational expert, found plaintiff to be not disabled.

The Third Circuit has reserved the question of whether use of the grids to add to the weight of a vocational expert's testimony is proper. See Washington v. Heckler, supra, 756 F.2d at 966–68. The government's position in this instance has a "reasonable" legal basis. Thus, on this issue, the government's position was "substantially justified."

However, based on the crucial issues outlined above, plaintiff is entitled to attorney's fees.

### The Amount of Attorney's Fees

■ The parties disagree over the amount plaintiff's attorneys are entitled to recover. The EAJA provides that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A) (Supp. III 1985).

The Secretary argues that an award in excess of $75 per hour would be improper. The Secretary relies upon the fact that the EAJA was reenacted as of August 5, 1985.

The $75 per hour figure was unchanged from the original EAJA. The Secretary argues that if Congress had wanted to adjust the rate to reflect inflation since EAJA's original enactment, it would have done so.

The Secretary relies, most significantly, on Chipman v. Secretary of Health and Human Services, 781 F.2d 545 (6th Cir. 1986) and Cariola v. Schweiker, No. 82–4908 (E.D.Pa. July 22, 1986) [Available on WESTLAW, DCT database]. In Chipman, the court upheld a district court decision rejecting plaintiff's request for attorney's fees of $100 per hour, and awarding fees of $75 per hour. The court did not hold that awards in excess of $75 per hour would be improper, but rather that "we do not believe the district court abused its discretion in determining that the fees awarded should not exceed $75 per hour even though the cost of living may have indeed risen since the enactment of the EAJA." Chipman v. Secretary of Health and Human Services, supra, 781 F.2d at 547. In Cariola, plaintiffs requested a 10% adjustment for inflation, based upon the Consumer Price Index. The court determined that plaintiff "failed to adequately justify his entitlement to a 10% increase." Cariola v. Schweiker, supra, slip op. at 7. The court noted that there was insufficient "support for the accuracy of [the] 10% figure; and no showing as to why this increase was applicable to hours worked in 1982, 1983 and 1985." Id. Thus, these cases do not stand for the proposition that awards in excess of $75 per hour are necessarily improper.

In this case, plaintiff's attorneys have submitted a Consumer Price Index covering the period from October 1981 to January 1986 in support of their request for fees of $87.25 per hour. This document provides no basis for determining whether the cost of living has changed since the EAJA was reenacted. Thus, plaintiff's at-

---

1. The grids consist of a series of "Medico-Vocational Guidelines" set out at 20 C.F.R. § 404, Subpart P, Appendix 2 (1986). The grids are used to determine whether a person with the claimant's qualifications and limitations is disabled. The grids may be used to justify a conclusion as to disability when the claimant suffers exclusively from exertional impairments.

torneys will recover fees at the rate of $75 per hour.