Hany Mahmoud **KIARELDEEN,**
Petitioner,

v.

Janet **RENO,** Attorney General; Immigration and Naturalization Service; Paul Schmidt, Chair, Board of Immigration Appeals; Doris Meissner, Commissioner of the Immigration and Naturalization Service; Andrea Quarantillo, District Director, Newark INS; and Ralph Green, Warden, Hudson County Correctional Center, Respondents.

No. CIV 99–3925.

United States District Court,
D. New Jersey.

April 11, 2000.

Regis Fernandez, Newark, NJ, David Cole, Center for Constitutional Rights, Washington, DC, Nancy Chang, Center for Constitutional Rights, New York City, NY, Houeida Saad, Arlington, VA, for Petitioner.

Robert J. Cleary, United States Attorney, James B. Clark III, Assistant United States Attorney, U.S. Department of Justice, District of New Jersey Newark, NJ, David W. Ogden, Acting Assistant Attorney General, Michael P. Lindemann, Assistant Director, Office of Immigration Litigation, Douglas E. Ginsburg, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for Respondents.

## OPINION

WALLS, District Judge.

Respondents oppose petitioner's motion for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412. Petitioner Hany Kiareldeen seeks an award of $110,743.06. The petitioner's request for costs and attorneys' fees is granted.

## BACKGROUND

On October 20, 1999, after petitioner, a resident alien, had been held in custody for 19 months by the Immigration and Naturalization Service (INS), this court issued a writ of habeas corpus directing the agency to immediately release the petitioner. *Kiareldeen v. Reno,* 71 F.Supp.2d 402 (D.N.J. October 20, 1999), *motion to vacate denied and appeal dismissed as moot,* C.A. No. 99–5851 (3rd Cir. March 2, 2000) (order). The court's decision was based on two alternative constitutional grounds: first, the evident due process concerns inherent in the government's use of secret evidence submitted *ex parte* and *in camera* to detain petitioner, and second, the

constitutional infirmity of the government's reliance on uncorroborated hearsay documents to support the detention.

In that opinion, the court rejected contentions by the government that: 1) this court had been stripped of jurisdiction to consider the habeas petition by the 1996 Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) and the Antiterrorism and Effective Death Penalty Act (AEDPA); 2) the petitioner, who had entered this country legally in 1990, was entitled to no due process rights; and 3) the decisions of *Jay v. Boyd,* 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), and *U.S. ex rel. Barbour v. District Director,* 491 F.2d 573 (5th Cir.1974), established the constitutionality of the use of secret evidence.

Kiareldeen's pre-petition efforts to challenge his detention had been repeatedly spurned by the respondents. In April 1999, he secured favorable rulings from an Immigration Judge, who granted Kiareldeen's request for adjustment of status and authorized his release on bond. That judge, who had reviewed first-hand the government's evidence, concluded: "An evaluation of the evidence by a person of ordinary prudence and caution cannot sustain a finding that this [Kiareldeen] has engaged in terrorist activity." That same day, the government successfully applied to the Board of Immigration Appeals for an emergency stay of the Immigration Judge's orders pending appeal.

On October 15, 1999, the Board of Immigration Appeals dismissed the INS' appeal of the adjustment of status issue, but stayed its decision until October 29, 1999; and on October 20, 1999, the Board dismissed the agency's appeal and stay of the release order.

On October 20, 1999, by opinion, this court granted the habeas writ to the resident alien. Again the government applied for an immediate stay, which a Third Circuit Judge granted temporarily and referred to a motions panel for final determination.[1] The government appealed to the Circuit Court from this court's opinion. On October 25, 1999, when the INS chose not to pursue a final administrative appeal by requesting certification by Attorney General Janet Reno, the petitioner was released from custody.

The government moved to vacate this court's opinion as moot. On March 2, 2000, a Third Circuit panel denied the motion to vacate this court's opinion and dismissed the government's appeal as moot.

## DISCUSSION

The Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), provides:

> Except as otherwise provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs ... incurred by that party in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The "position of the United States" includes, "in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D).

■ The government bears the burden to show that its positions were substantially justified, both before and during litigation, by: 1) a reasonable basis in truth for the facts alleged; 2) a reasonable basis in law for the theory it propounds; and 3) a reasonable connection between the facts alleged and the theory advanced. *Washington v. Heckler,* 756 F.2d 959, 961 (3rd Cir.1985)

---

**1.** The government withdrew its request for a stay on October 29, 1999, after it had released petitioner.

### 1. Prevailing Party

Initially, the government contends that petitioner was not a "prevailing party" because the litigation was not a material contributing factor to his release. To assess prevailing party status:

> [T]he first part of the test "is whether plaintiff achieved some of the benefit sought by the party bringing the suit." ... The second part of the prevailing party test is that of causation, i.e., whether the "litigation 'constituted a material contributing factor in bringing about the events that resulted in the obtaining of the desired relief.' "

*Dunn v. United States*, 842 F.2d 1420, 1433 (3rd Cir.1988) (citations omitted). A district court "must apply the most expansive definition of causation. The district court must determine whether the [petitioner's] lawsuit is causally linked to the relief obtained" by deciding whether it changed the respondents' conduct. *Id.* The lawsuit "need not be the sole cause of [respondents'] action." *Id.*

The government says that the October 1999 decisions of the Board of Immigration Appeals which upheld the Immigration Judge's orders were "merely ... product[s] of the prescribed administrative process running its course." Resp. Br. at 6. It argues that the "independent actions of the Executive Branch" caused Kiareldeen's release. *Id.* The court does not accept that narrative.

■ Instead, the court finds that multiple causes contributed to petitioner's release: The court takes judicial notice of the extensive press coverage of its October 20, 1999 opinion.[2] *See In re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F.Supp. 450, 496 (taking judicial notice that proposed settlement received press coverage; concluding that class notice was adequate), *aff'd in relevant part*, 148 F.3d 283, 327 n. 91 (3rd Cir.1998); *cf. U.S. v. Baker*, 641 F.2d 1311, 1316 (9th Cir.1981).

■ The court acknowledges the complex procedural history of this action, and that the writ of habeas corpus, once stayed, was not the sole and direct cause of petitioner's release. Yet it is evident that this court's opinion, the decisions of the Board of Immigration Appeals, and the consequent, national media coverage focused a great amount of attention on Kiareldeen's plight.[3] Under the circumstances, no reasonable person could deny that the

**2.** Fed.R.Evid. 201 authorizes a court to take judicial notice of facts "not subject to reasonable dispute" because either: 1) generally known within the court's territorial jurisdiction; or 2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The court allowed the parties an opportunity to object to judicial notice "that this court's opinion and writ of habeas corpus issued October 20, 2000 and the Board of Immigration Appeals' opinions were the subject of national reportage by the news media." The government so objected; its arguments are meritless.

**3.** *See, e.g.*, Lorraine Adams and David Vise, "Classified Evidence Ruled Out in Deportation," Washington Post, October 21, 1999, at A5; "Secrecy and Due Process," Wash. Post, October 25, 1999, at A28; "Plot Alleged," Nationline, USA Today, October 21, 1999, at 3A; David Voreacos, "Terrorism Suspect Jailed 'Unconstitutionally,' " The Record, Northern New Jersey, at A5; "Release Ordered for Arab Accused of Reno Death Plot," Across the Nation, Chicago Tribune, October 21, 1999, at 11; "Citing Constitution, U.S. Judge Frees Palestinian Man," Seattle Times, October 21, 1999, at A9; "Judge Defies Government in Case of Jailed Immigrant," Portland Oregonian, October 21, 1999, at A2; Amy Westfeldt, Pittsburgh PostGazette, October 21, 1999, at A19; "Release Ordered for Man Accused in Reno Threat," Orange County Register, October 21, 1999, at A18; Ronald Smothers, "Judge Bars Use of Secret Data to Hold Immigrant," N.Y. Times, October 21, 1999, at B1; "Palestinian Accused of Plot Against Reno is Ordered Freed," Houston Chronicle, October 21, 1999; Nation in Brief, Atlanta Constitution, October 21, 1999, at A14; "Federal Judge Orders Release of Palestinian," Arizona Republic, October 21, 1999, at A13; "Judge Orders Palestinian Freed," Agence France–Presse, October 21, 1999; Robert Rudolph, "Judge Tells INS to Free Detainee," Star–Ledger, October 21, 1999, at 1.

lawsuits, both administrative and judicial, materially contributed to the government's decision to abandon its appeals and accede to their repeated determinations that petitioner should be released. The government's assertion that *uninfluenced,* "independent actions of the Executive Branch" caused such result is incredible. Resp. Br. at 6.

The government further contends that Kiareldeen did not achieve the benefits sought. Respondents claim that they have not changed their legal position as a result of the lawsuit—that the government continues to detain immigrants on the basis of secret evidence. That argument is irrelevant. The purpose of the suit was not to declare unconstitutional the act permitting secret evidence: the petitioner, a resident alien, sought the invalidation of its application to him. *See* 71 F.Supp.2d at 408 ("[I]t is clear that the petitioner is not mounting a facial challenge to the statute, but instead questions the constitutionality of its application to his case[;] the court expresses no comment on the overall validity of 8 U.S.C. § 1229a(b)(4)(B)."). It is obvious that Hany Kiareldeen, detained for nearly two years, denied bail even after favorable administrative rulings, sought and achieved his goal: freedom.

The court concludes that petitioner prevailed in this action.

### 2. *Substantial Justification*

Respondents claim that their litigation positions were substantially justified, relying on *League of Women Voters of California v. FCC,* 798 F.2d 1255, 1259 (9th Cir. 1986) that "the defense of a congressional statute from constitutional challenge will usually be substantially justified." Yet the Ninth Circuit continued: "[N]either the language of the EAJA nor its legislative history support the argument that this is true as a matter of law," and rejected the government's argument that, "regardless of the nature of the legislation or the rationality of the defense interposed on its behalf ... the government's position must be held 'reasonable' whenever the underlying dispute is over the constitutionality of

a statute." *Id.* Consequently, that Circuit Court evaluated the reasonableness both of the statute and of the underlying government conduct.

The Third Circuit concurs:

Substantial justification "constitute[s] a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous...." If ... the case turns on an unsettled or "close question of law," the government usually will be able to establish that its legal theory was "reasonable," even if it was not ultimately accepted as a legal rule by the courts. When the government's legal position clearly offends established precedent, however, its position cannot be said to be "substantially justified."

*Heckler,* 756 F.2d at 961–62.

Here the government continues to assert litigation positions that the court finds almost foundationless in the environment of factual reality and decisional precedent. As example, the respondents initially argued that Kiareldeen "held the keys to his cell," and that his detention was the result of his own efforts to delay his deportation. Habeas Answer at 15–17. Even now, the government suggests that "Kiareldeen could simply have gone to the American Embassy in Israel to apply for a visa, like thousands of others, and avoided his lengthy jail stay." Resp. Br. at 16 n. 9. Similarly, the government asserted that petitioner was entitled to *no* due process rights because he could be considered as an excludable alien—a position which the court found "somewhat disingenuous." 71 F.Supp.2d at 409.

Throughout this litigation, the respondents have asserted marginal legal propositions. Substantively, to justify its use of secret evidence, the government relied on decisions which predated the seminal due process analysis of *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It proposed that the *Mathews* test is inapplicable in the immigration con-

text—an unsupportable position in view of the instructive Circuit Court decisions of *Rafeedie v. INS*, 880 F.2d 506 (D.C.Cir. 1989) and *American–Arab Anti–Discrimination Committee v. Reno*, 70 F.3d 1045 (9th Cir.1995).

Even now, the government continues to advance that this court lacked jurisdiction over the habeas petition, and thus over the present motion. The court has already dismissed that argument based on unambiguous Third Circuit precedent. *See Sandoval v. Reno*, 166 F.3d 225 (3rd Cir. 1999); *Catney v. INS*, 178 F.3d 190 (3rd Cir.1999); *Liang v. INS*, 2000 WL 264216, at *8 (3rd Cir. March 9, 2000) ("A repeal of habeas jurisdiction can only be effected by express congressional command.... That holding is as applicable to the permanent rules as it was to the transitional rules in Sandoval."); *see also Valdivia v. INS*, 80 F.Supp.2d 326 (D.N.J.2000) (sustaining jurisdiction over habeas petition in permanent rules case). The government is charged with notice of controlling authority. Yet, in its habeas answer, the government claimed that the United States Supreme Court had found that, after the 1996 congressional amendments, "habeas relief will also be unavailable"—a position taken by the parties to the litigation, not by the Court. *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 945, 142 L.Ed.2d 940 (1999); Habeas Answer at 9.

■ The court's earlier opinion observed that many of the government's basic legal propositions, from threshold jurisdictional issues to constitutional ones, were untenable under existing precedent. Review of the government's arguments here confirms that conclusion. The government's postures throughout this litigation have not been substantially justified.

The government's prelitigation actions form an alternative base for the court's holding. 28 U.S.C. § 2412(d)(2)(D). Between March 1998, when petitioner was taken into custody, and July 1998, the government produced five different summaries of the "secret evidence" relied on to support the detention. The most detailed of these summaries was both cursory and conclusory, and alleged only that "[t]he information in this communication was obtained from multiple reliable sources who have provided reliable information in the past." Habeas Petition, Exhs. A–E. And the government has repeatedly resisted petitioner's efforts to cross-examine its witnesses and to review its written files. During Kiareldeen's removal hearing, the INS attempted to preclude him from interrogating his ex-wife, a potentially crucial source of government information; the petitioner's Freedom of Information Act case against various government agencies continues to this day.

Respondents are responsible for the petitioner's prolonged and unreasonable detention, which they sought to justify on the basis of evidence and procedures that this court found constitutionally deficient. They have not met their "strong burden" of showing that their actions and litigation positions were "justified to a degree that could satisfy a reasonable person"—that is, substantial justification. *Heckler*, 756 F.2d at 961; *Pierce v. Underwood*, 487 U.S. 552, 564, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). *See also Rafeedie v. Immigration and Naturalization Service*, No. 88–0366, slip op. at 8 (D.D.C. August 22, 1996) (awarding attorneys' fees under EAJA even where government action was expressly authorized by statute and regulation, because government's litigation positions did not comport with established due process analysis, and "in light of the utter absence of procedural due process protections" there afforded).

Finally, the government complains that "special circumstances" would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). Respondents argue that Kiareldeen cannot present "clean hands" to the court because he indisputably violated the immigration laws, and because he submitted an allegedly fraudulent birth certificate. Resp. Br. at 15. This argument is unpersuasive. The court does not find petitioner's admit-

ted visa overstay to be sufficient grounds to deny an otherwise proper fee award, particularly when compared to the government's pattern of concealment and legal misdirection. The court earlier declined to resolve the authenticity of the birth certificate; again the government produces no evidence to support its allegations of fraud. 71 F.Supp.2d at 414.

The government relies upon the Second Circuit decision of *Oguachuba v. INS,* 706 F.2d 93 (2nd Cir.1983). There, the Court found "unclean hands," and refused to award fees, when an alien sought citizenship through a questionably extant marriage, ignored a valid order of deportation, escaped from INS custody, and finally, after being successfully deported, reappeared three days later at Kennedy Airport and attempted to gain admission under a false identity.

The charges against the present petitioner do not approach that level of resistance to law. This court finds that the purpose of the EAJA, "to eliminate for the average person the financial disincentive to challenge unreasonable government actions," would be well served by an award of costs and attorneys' fees here. *Jean,* 496 U.S. at 163, 110 S.Ct. 2316.

### 3. *Amount of Award*

The statute provides that a fee award must be based on "prevailing market rates for the kind and quality of the services furnished, except that ... attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

■ David Cole, lead counsel for petitioner, requests an increased rate of $300 per hour. The court is authorized to grant such an increase when an attorney has some "distinctive knowledge or specialized skill needful for the litigation in question," such as patent law, or knowledge of foreign law or language. *Pierce,* 487 U.S. at

572, 108 S.Ct. 2541. Here the jurisdictional issues, constitutional inquiries, and questions surrounding the interpretation of the Immigration and Naturalization Act after the IIRIRA and AEDPA amendments, necessitated specialized knowledge equivalent to that of the intellectual property bar. The court has reviewed Cole's resume, the accompanying declarations, and does not doubt his expertise in these arenas closely fit petitioner's needs. *See* Pet. Br. Exhs. 3 (Cole Decl.), 7 (Decl. of Lucas Guttentag, Director of the Immigrants' Rights Project of the ACLU National Office), 8 (Decl. of Denise Sabagh, Past President of the American Immigration Lawyers Association). An hourly rate of $300 for Cole's services is reasonable, and justified for his necessary services.

Petitioner's other counsel, Chang, Fernandez and Saad, seek cost-of-living increases to a rate of $134.31 per hour. Such is authorized by statute and caselaw; the court grants the request as reasonable. *See, e.g., Dewalt v. Sullivan,* 963 F.2d 27 (3rd Cir.1992). Their services were necessary to the petitioner.

Finally, the government argues that the attorney billing records submitted to the court are vague and redundant. This court has reviewed the submissions of petitioner's counsel and concludes that neither contention is supported.

### CONCLUSION

The petitioner's request for counsel fees and costs of $110,743.06 is granted.

**SO ORDERED.**