Harrison DENNIS, Jr., Appellant,

v.

Margaret M. HECKLER, Secretary, United States Department of Health and Human Services, Appellee.

No. 84–1276.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Dec. 6, 1984.

Decided March 6, 1985.

Stephen F. Gold, Jonathan Stein, Community Legal Services, Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Stanley Weinberg, Edward T. Ellis, Asst. U.S. Attys., E.D. Pa., Beverly Dennis, III, Regional Atty., James S. Feight, Jr., Asst. Regional Atty., Dept. of Health and Human Services—Region III, Philadelphia, Pa., for appellee.

Before ALDISERT, Chief Judge, BECKER, Circuit Judge, and STERN, District Judge.*

**OPINION OF THE COURT**

BECKER, Circuit Judge.

This is an appeal by Harrison Dennis, Jr., a social security disability claimant who became a prevailing party against the United States within the meaning of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (repealed 1984), when, after the

* The Honorable Herbert J. Stern, United States District Judge for the District of New Jersey, sitting by designation.

district court reversed an adverse decision of the Secretary of Health and Human Services and remanded for further consideration, the Social Security Administration ("SSA") Appeals Council ordered an award of benefits.[1] Dennis was unsuccessful, however, in obtaining an award of counsel fees under the EAJA because the district court decided that the position taken by the Secretary both in the agency and in the district court was "substantially justified."

There are no disputed facts before us and the sole question for review is whether, on the administrative record, the Secretary has met her burden of showing substantial justification for her agency and litigation position.

In *Washington v. Heckler,* 756 F.2d 959, consolidated with this case for disposition and decided this day, we discuss the law applicable to the determination of entitlement to EAJA counsel fees, and the appropriate scope of review of a district court determination that the position of the government was substantially justified. We apply our conclusions here. In *Washington* our focus was on whether the Secretary's legal position was substantially justified; in this case we focus on her factual position. Because our review of the administrative record leads us to the conclusion that the position of the Secretary was not substantially justified, we reverse and remand for an award of fees.

## I.

### A.

Dennis is a forty-nine year old man with a sixth-grade education. He suffers from chronic paranoid schizophrenia. Between 1964 and 1973, Dennis was institutionalized seven times in mental hospitals. He was violent; he hallucinated; and he heard "voices from God." Even after his last

1. Dennis applied for social security disability insurance benefits and supplemental security income on January 10, 1977, on grounds of psychiatric disability. The Secretary awarded benefits retroactive to January 30, 1970, the onset date of the psychiatric disability. These benefits were terminated in September 1980 because the Secretary found that Dennis's impairment no longer prevented him from working. On July 29, 1981, after a hearing, the Administrative Law Judge affirmed the decision to terminate benefits, and, on November 3, 1981, the Appeals Council affirmed the ALJ's decision. Dennis thereupon filed a complaint in the district court for the Eastern District of Pennsylvania. The case was referred to a United States Magistrate who issued a "Report-Recommendation" concluding that for a number of reasons, the decision of the Secretary was not supported by substantial evidence. The district court adopted the Magistrate's report supplementing it with a brief memorandum and on June 8, 1983, ordered that the case be remanded to the Secretary for further proceedings. Following remand, the Appeals Council ordered that benefits be awarded to Dennis.

In *Brown v. Secretary of Health and Human Services,* 747 F.2d 878 (3d Cir.1984), we held that a social security disability claimant does not become a prevailing party under the EAJA merely because the district court finds that a decision of the Secretary denying benefits is not supported by substantial evidence and remands the case for further proceedings, because "the claimant's rights and liabilities and those of the government ha[d] not yet been determined."

*Id.* at 883. However, we also noted that the Secretary had represented to us that, pursuant to 42 U.S.C. § 405(g) (1982), she will return to the district court and file a copy of the final agency decision at the conclusion of any remand proceeding, requesting the district court to enter a final judgment. *Id.* at 884. After the entry of final judgment, plaintiff's counsel would then have 30 days to file an EAJA petition. Even in the absence of this procedure, however, we held that, in the exercise of their equitable powers, district courts could consider fee requests where the plaintiff had prevailed on remand. *Id.* at 885.

In this case, the district court remanded the matter to the Secretary by order dated June 9, 1983. On September 26, 1983, the Appeals Council issued a decision favorable to plaintiff. Plaintiff's attorney filed his EAJA petition on November 11, 1983, including as "Exhibit A" a copy of the favorable Appeals Council decision. In an order dated April 11, 1984, the district court denied the motion for attorneys fees on its merits.

The Secretary had not filed the Appeals Council's decision with the district court nor had the district court filed a final judgment in the action as of the date of argument over the appeal. We do not believe, however, that *Brown* deprives us of jurisdiction. Unlike *Brown,* it is clear that the appellant here has had a determination of his "rights and liabilities and those of the government." *See Miller v. United States,* 753 F.2d 270 (3d Cir.1985). The government, in a post-argument memorandum, expressed agreement with this position.

release from Pennsylvania State Hospital in 1973, he continued to hear voices that urged him to commit suicide. *See* Appendix at 130A.

In 1975 Dennis came under the care of Lydia Schut, M.D., a psychiatrist. On September 2, 1980, Dr. Schut wrote that Dennis was a chronic paranoid schizophrenic, but had been in remission during the past year.[2] *Id.* at 197A. However, Dr. Schut also pointed out that Dennis "does *not tolerate* stress well" (emphasis in original), was withdrawn and very passive, had a flattened affect, only partial judgment, a depressed mood and no social life. *Id.* The only other current psychiatric evidence before the ALJ was a June 10, 1981, letter—also from Dr. Schut. *See id.* at 209–10A.[3] In this letter, Dr. Schut describes Dennis as "suspicious, very passive, resistant to change, and asocial. . . . He has few friends, and under stress he becomes more withdrawn and suspicious." *Id.* at 209A. Dr. Schut concluded:

> Mr. Dennis suffers from a residual schizophrenia with marked impairment of his functioning in terms of social relationships and is unable to work because of his withdrawal, inability to handle stress, distractability, and suspiciousness. When he is confronted with a need to change his routine, he resists as long as possible, becoming increasingly anxious. I believe that any job will prove too stressful and he could break down simply at the fact that he will have to go back to work in the future. The goal of therapy is to help him keep as much predictability

and stability in his life as possible in hopes of preventing another breakdown. *Id.* at 209–10A.

**B.**

The ALJ conducted a hearing at which he received the medical records and the testimony of Dennis and a vocational expert, Dr. Ephrain Royfe. At the hearing, Dennis testified that his life is extremely restricted. He rarely leaves his home and engages in few activities other than driving his mother to the supermarket and occasionally visiting a few friends. *See id.* at 89A, 96–97A. In order to avoid getting excited, he "tries to take it easy" and keep stress to a minimum. *Id.* at 105A. Dr. Royfe agreed that Dennis could not return to his former employment—heavy unskilled work.[4] *Id.* at 117A. Dr. Royfe believed, however, that Dennis could perform certain categories of light work—maintenance worker, sweeper in a factory or a plant, kitchen helper in varieties of cafeterias and lunchrooms, simple hand assembly, order filling, and watchman work. *Id.*[5] Indeed, Dr. Royfe expressed the view that such work would be rehabilitative in nature. *Id.* at 125A. He discounted the stress in the various jobs but conceded that if, because of his alleged condition, Dennis would not be able to attend or remain on a work site for a regular and sustained period, "there would be no employment he could then undertake." *Id.* at 85A.

**C.**

The ALJ, in his opinion, acknowledged that "[t]here is no doubt that [Dennis] has

2. Even during this "remission," Dr. Schut noted that Dennis was receiving medication in the form of prolixin deeanoate. Appendix at 197A.

3. Throughout the entire administrative proceedings, the only current medical psychiatric evidence was from Dr. Schut, who was Dennis' treating psychiatrist. Her 1980 and 1981 reports are uncontroverted. All other psychiatric evidence was from Dennis' hospital reports prior to 1977. The relevant date for disability determination was September 1980.

4. Dennis' last employment was with the City of Philadelphia working on sanitation trucks. Be-

fore that he worked in construction operating a jackhammer, in a hosiery shop (where he was required to lift 40 to 50 pounds), *id.* at 109A, in an aluminum factory (where he was required to lift 60 to 90 pounds), *id.* at 110A, with a coat company (required to lift fifty pounds), *id.* and a stainless steel company (required to lift 75 to 80 pounds). *Id.* at 111A.

5. The ALJ in his hypothetical question to the expert had ruled out, "from a stress point of view," assembly line and conveyor belt work.

an underlying schizophrenia condition which in years past has required a number of hospitalizations." *Id.* at 61A. However, the ALJ added that "it is just as clear" that Dennis' condition "has been controlled with medication and has been in remission for eight years." *Id.* He noted Dennis' ability to drive a car and sit through the hearing, both of which the ALJ described as most stressful, *id.*, and observed that Dennis evidenced no fear or suspicion during the hearing. *Id.* at 61–62A; *see also id.* at 120A. He rejected Dr. Schut's claim that Dennis was easily distracted and had impaired vision on the grounds that Dennis was able to drive and that Dr. Schut would have seen to it that Dennis did not have a driver's license and endanger himself and others if these conditions in fact existed.[6] *Id.* at 62A. The ALJ also found that Dennis was not easily distracted during the hearing. *Id.*

The ALJ did not directly reject Dr. Schut's findings. Rather he concluded that, notwithstanding the prior hospitalizations, Dennis was in the eighth year of remission, his condition was controlled by medication, and that his "life style, activities[,] appearance, presentation of himself verbally and otherwise at the hearing, are all factors which compel [the] conclusion that [his] disability ceased in September 1980." *Id.* at 63A. The ALJ agreed that Dennis should not be put into a "highly stressful atmosphere," but was persuaded that he could perform the less stressful jobs identified by the vocational expert. *Id.* He thereupon determined that Dennis' disability ceased in September 1980. *Id.*

Counsel for Dennis appealed to the SSA Appeals Council arguing that the ALJ

erred in failing to apply the listing of impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Counsel cited *Livingstone v. Califano,* 614 F.2d 342 (3d Cir.1980), and pointed out that Dennis had met the criteria in § 12.03 of the listing of impairments which deals with "functional psychotic disorders." *Id.* at 43A. Counsel further argued that the ALJ had ignored the uncontroverted medical evidence of the treating psychiatrist that Dennis could not handle stress and therefore was unable to work. *See id.* at 47–48A. The Appeals Council nonetheless affirmed the decision of the ALJ. *Id.* at 38A.

### D.

The United States Magistrate to whom the case was referred by the district court concluded that the ALJ did not give appropriate weight to the opinion of Dennis' treating psychiatrist, failed to support his findings by substantial evidence, and failed to take into consideration the listing of impairments. *Id.* at 33A.[7] The magistrate recommended that the case be remanded for further proceedings at which the ALJ would be required to make new findings but not adduce additional evidence. *See id.* at 33–34A. The district court adopted the Magistrate's report and recommendation with the modification that at the remand hearing new evidence could be presented. *Id.* at 21–22A.

On remand, and without requiring an administrative hearing, the Appeals Council awarded benefits. The Appeals Council concluded that:

the claimant's schizophrenia is a severe impairment ..., for there is ample evidence that his condition significantly af-

---

6. The ALJ, continuing with his medical-like diagnosis, also noted that "watching television [one of Dennis' activities] does not indicate a serious vision defect." *Id.* at 63A.

7. The district court's order was entered in this case on June 9, 1983, prior to this Court's decision in *Kuzmin v. Schweiker,* 714 F.2d 1233 (3d Cir.1983), filed on August 18, 1983, announcing a medical improvement standard. Thus, even

though this is a "termination" case, the medical improvement standard was not applied. We have concluded that in determining whether the government's position is "substantially justified," we will consider that position in relation to the law as it stood at the time that the district court originally resolved the merits of the case. *Washington v. Heckler,* No. 84–1276, typescript op. at 14 n. 8 (3d Cir. March 6, 1985).

fects his ability to respond appropriately to supervision, usual work situations, and co-workers; to appropriately deal with changes in a routine work setting; and, to exercise suitable judgment.

*Id.* at 8A. The Appeals Council also ruled that the listing of impairments must be applied, even though "[a]s ... noted by the magistrate ..., the administrative law judge did not address this issue [*i.e.,* the listing] in his decision." *Id.* In applying the listing, the Council held that "during September 1980 and thereafter, the severity of the claimant's schizophrenia has equalled in severity the degree of impairment reflected in paragraph 12.03 A 6 and B of the Appendix." *Id.* Furthermore,

at all pertinent times, the record adequately shows the claimant's daily activities were markedly restricted, that his interests were similarly constricted, and that his ability to relate to other people has been persistently disturbed.... [A]lthough the claimant may no longer experience hallucinations and delusions, the evidence reveals that his underlying schizophrenia continues to produce suspiciousness, seclusiveness, and the need to maintain a controlled, unchanging life pattern in order to avoid further decompensation or another breakdown.

*Id.* at 8A.

## II.

After the favorable Appeals Council's decision, counsel for appellant filed the motion for attorneys' fees. The district court reviewed the government's position, "both at the agency level and at the post complaint stage." *Id.* at 2A. The district court denied the motion, finding that "the government has carried its burden in showing its position had a reasonable basis in law and fact." *Id.*

The basis for the district court's opinion is contained in two paragraphs of its brief memorandum opinion:

8. The handwriting is not very legible.

At the hearing before the Administrative Law Judge, claimant introduced the medical report of Doctor Schut. After a one page explanation of the claimant's condition she opined that any job would prove too stressful for claimant. Another doctor confirmed Doctor Schut's conclusion that claimant "does not tolerate stress well." This doctor, however, gave claimant's prognosis as "fair." It is reasonable to conclude this prognosis indicates no serious medical disability.

Further evidence of the reasonableness of the government's position can be found in the testimony of the vocational expert. Based upon the documentary evidence of record, and facts supplied in hypothetical questions, this expert concluded there were jobs in the national economy which claimant could perform. Because there was *some evidence* of improvement in claimant's condition, and evidence that he could function in society to a certain degree and could control his psychiatric problems with medication, the government was not unreasonable in relying upon the expert's opinion. Furthermore, for the reasons expressed in my June 8, 1983, memorandum and order, this is true regardless of Doctor Schut's conclusion to the contrary.

*Id.* at 2–3A (emphasis supplied.)

The district court does not identify the "other doctor." From the record, we can only conclude that the report relied upon by the district court was, in fact, the September 2, 1980, report supplied by Dr. Schut which did state that Dennis' prognosis was fair. *See id.* at 197A.[8] We have already discussed the general content of this report and its statement of Dennis' disability.

## III.

When the district court filed its opinion it did not have the benefit of our decision in *Tressler v. Heckler,* 748 F.2d 146 (3d Cir.

1984). We announced in *Tressler* the principle that the government does not meet its burden by showing "some evidence" to support a conclusion that the appellant could do some work. *Id.* at 150. That was the standard that the district court applied in this case, and under *Tressler* the standard was incorrect. That conclusion does not, however, end our deliberation; rather, we must consider whether there is a reasonable basis in fact for the Secretary's position. Our scope of review is plenary. *Washington v. Heckler, supra,* 756 F.2d at 963.

In our view, the district court erred in determining that the Secretary's position was substantially justified. A review of the entire record reveals that nowhere did the Secretary offer medical evidence to support a conclusion that plaintiff was not totally precluded from doing any work. The psychiatric testimony is not only uncontradicted but devastating. Dennis suffers from chronic paranoid schizophrenia,[9] with marked impairment of functioning and an inability to work because of withdrawal, inability to handle stress, distractability, and suspiciousness. Dr. Schut opined that *any job* would prove too stressful, leading to a breakdown simply because he would have to go back to work in the future. We recently noted the impact of stress on the ability of a paranoid patient to work, *see Caffee v. Schweiker,* 752 F.2d 63, 67–68 (3d Cir.1985); in *Caffee* we reversed a denial of benefits because the Secretary had unduly discounted that factor.[10] Thus the only actual "medical evidence" relied upon by the ALJ was his own observations. But we have held time and again that an ALJ may not attempt such diagnosis. *See, e.g., Wal-*

*lace v. Secretary of HHS,* 722 F.2d 1150, 1155 (3d Cir.1983) ("an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence") (quoting *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir.1979)).

The substitution by the ALJ of his medical judgment for that of the physicians violates clear Third Circuit precedent. His failure to apply the listings, which the facts of this case indicated were appropriate for consideration, also violates the Social Security Act.[11] Given these facts, there is no reasonable basis in fact for the Secretary's position at the agency, or in the subsequent litigation. Her position therefore was not substantially justified.

Accordingly the judgment of the district court will be reversed and the case remanded for determination of an appropriate fee under the EAJA.

ALDISERT, Chief Judge, concurring.

I concur in the judgment of the court for the reasons set forth in my concurring opinion in *Washington v. Heckler,* 756 F.2d 959 (3d Cir.1985) (filed this day).

---

9. The severity of this disease has often been noted. *See, e.g., Caffee v. Heckler,* 752 F.2d 63, 67 (3d Cir.1985).

10. In *Caffee* we also noted that the Secretary had recently drafted regulations to account for "the problems that the mentally ill have in working in stressful and competitive situations." *Id.* at 67 & n. 6.

11. We might alternatively ground our decision on the Secretary's clear rejection of settled law, as the government points out that the application of the listing of impairments is not automatically mandated but rather follows as the result of an evaluation of the evidence. However, inasmuch as the Secretary's position lacks a reasonable basis in fact, we need not reach this alternate ground.