Maria **CIARLANTE**

v.

Margaret **HECKLER, Secretary of Health and Human Services.**

Civ. A. No. 83-6208.

United States District Court, E.D. Pennsylvania.

Sept. 24, 1985.

Barry F. Penn, Philadelphia, Pa., for plaintiff.

Joseph M. Masiuk, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

This is a motion by plaintiff Maria Ciarlante for an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (1982) (repealed 1984). The motion follows this court's entry of an Order, on April 18, 1985, pursuant to a Report and Recommendation of Magistrate Hall, reversing a decision of the Secretary of Health and Human Services (the "Secretary") and directing an award of benefits to plaintiff. In the pending motion plaintiff contends that because she was a "prevailing party" within the meaning of the EAJA and because the Secretary did not have a substantial justification for agency and litigation positions, she is entitled to attorney's fees under the act. The Secretary does not contest the plaintiff's status as prevailing party but does argue that the government's position was substantially justified.

I turn first to an analysis of the facts of record, then to a discussion of the applicable law defining substantial justification, and finally to an examination of whether in the instant case the Secretary's position met this standard.

## I.

The plaintiff is a sixty-six year old woman who was born in Italy on October 31, 1921. Administrative Record at 35. Her command of English is not good. She has worked as a nurse's aid in Italy for thirty-one (31) years and in this country from 1973 until 1981. Id. at 35, 102. This job seems to demand a considerable amount of physical exertion: the plaintiff has been required to stay on her feet for an entire working day and to help lift patients. Id. at 36.

Plaintiff has been unable to work since July of 1981 Id. at 37. She complains of pains in her face, back, hips, knees, ankles, feet, and elbows. Id. She is able to bathe and dress herself, but she cannot fix her own meals. Id. at 40. She is unable to do many household chores; she often has trouble climbing the stairs; and she spends most of the day watching television and reading Italian books. Id. at 41–42.

Plaintiff filed concurrent applications for disability and supplemental security benefits on November 27, 1981, alleging an injury to the coccyx and to her kidney. These applications were denied initially and upon reconsideration. Id. at 65–83.

With respect to the medical evidence of record, there first is a report dated February 23, 1982, of a Dr. G.E. Gonzalez, M.D. Id. at 114–17. While the doctor found that the "spine showed normal curvature" and that there were "no areas of injury" to the neck, he also noted that "[t]he neck showed moderate restriction to any conscious motion or manipulation" and the "[r]ange of motion" of the spine was "diminished." Id. at 116. His diagnosis included three findings: hypertension, arthritis, and bladder prolapse with a secondary hematuria (the presence of blood in the urine). The doctor found her condition "fair except for the bladder prolapse," which in his view a surgical procedure would control. Id. at 117. Moreover, an x-ray of the plaintiff's spine taken on February 15, 1982, was normal. Id. at 120.

On March 24, 1982, plaintiff was admitted to the West Jersey Hospital because of severe abdominal pain and signs of peritonitis. Id. at 125. She underwent exploratory surgery, at which time she was found to have a perforated diverticulitis, a condition caused when small pockets in the wall of the colon fill with stagnant fecal material and become inflamed. A temporary colostomy was performed. Id. An x-ray taken at this time revealed calcified stones in the gall bladder. Id. at 129. At the request of the Disability Determination Division, Dr. Theodore A. Lyras, M.D., the physician treating the plaintiff during her stay at West Jersey, submitted a report stating

that he had diagnosed the plaintiff as suffering from acute sigmoid colon and diverticulitis with pelvic abscess. *Id.* at 150.

Dr. Michael J. Hicks, M.D., performed an examination on the plaintiff on June 10, 1982. *Id.* at 152–53. His impression was 1) that the plaintiff suffered from a "degenerative joint disease primarily involving ankles, with a mild to moderate ambulatory impairment with prolonged walking"; 2) "exogenous obesity"; 3) "status post recent colostomy secondary to diverticulitis"; and 4) "hypertension and cholecystitis by history." *Id.* at 153. In addition, Dr. Hicks found the plaintiff's range of motion "full overall" but her "hand function" "somewhat impaired, as evidenced by decreased grip strength bilaterally." *Id.*

Plaintiff was again hospitalized on July 14, 1982, to close the colostomy, a procedure that she tolerated well. *Id.* at 162. On November 22, 1982, plaintiff was admitted to the hospital for elective surgery because of gallbladder disease. *Id.* at 173. Her stay in the hospital was prolonged because of a complaint of pain in her right upper quadrant. This was diagnosed as intercostal neuralgia and the plaintiff was released for outpatient care.

Dr. B.A. Tomassetti, M.D., submitted a physical capacities evaluation on December 12, 1982. *Id.* at 175. He found that the plaintiff could sit, stand, or walk for only two hours out of an eight-hour work day. Moreover, he found that she could occasionally carry up to 10 lbs. He also found that while she could use her hands for simple grasping and fine manipulations, she could not use them for pushing and pulling. Furthermore, he diagnosed her as not being able to use her feet to operate foot controls. Finally, he concluded that she could not squat and climb at all, and she could only occasionally bend, crawl, and reach above shoulder level.

Dr. John Antolik, M.D., made similar assessments as to the plaintiff in a report dated April 21, 1983. *Id.* at 178. Dr. Antolik, who is the plaintiff's last treating physician, submitted another report, dated May 3, 1983, in which he described the plaintiff's

overall condition. *Id.* at 179. In this report, he pointed out that the plaintiff suffered from a ventral abdominal hernia as of her last visit. He mentioned that he has prescribed various drugs for her complaints of pain and lack of sleep. He stated that she cannot stand for more than 15 minutes at a time, cannot walk for more than a block, and cannot hold any object over 10 lbs. He also noted that she suffers from hypertension and diverticulitis, for which he has also administered drugs. In his opinion, the plaintiff will be hospitalized in the future.

On April 21, 1983, the Administrative Law Judge ("ALJ") held a hearing on plaintiff's claim and heard testimony from the plaintiff and her daughter-in-law. In a decision entered on August 4, 1983, the ALJ denied plaintiff's request for disability and supplemental security income benefits.

In his evaluation of the evidence, the ALJ noted that the key question was whether the claimant had a severe impairment, which would mean one that significantly limited the "claimant's ability to perform basic work related functions for a period of 12 continuous months." *Id.* at 14. Symptoms, he noted, could not alone determine disability, but medical signs and findings would have to show that there was a medical condition that could be used to produce the symptoms alleged. *Id.*

In the ALJ's view, the evidence could not support a finding that the plaintiff had a severe impairment within the meaning of the Social Security Act. *Id.* For the ALJ, the x-ray evidence had suggested a normal cervical spine, and while it had revealed some osteophyte formation of the left ankle, the ambulatory impairment was only mild. *Id.* According to the ALJ, the operations the plaintiff had undergone only temporarily disabled the plaintiff. *Id.* And in his view the plaintiff's hypertension was under control. *Id.* Because the reports of Drs. Tomassetti and Antolik concerning the plaintiff's limitations of function were not accompanied by objective medical data, the ALJ discounted them. *Id.* at 14–15. In light of these findings, the ALJ considered

the plaintiff's subjective allegations as not fully credible. *Id.* at 15. The Appeals Council of the Secretary affirmed the ALJ's decision. *Id.* at 3–4.

In an action brought to review the final decision of the Secretary, Magistrate Hall overturned the ALJ's decision on the basis that it was not supported by substantial evidence. Magistrate's Report at 9. In the Magistrate's view, the ALJ had failed to explain why he disregarded "probative medical evidence supportive of the plaintiff's s claims." *Id.* at 6. In particular, the Magistrate noted that the ALJ had ignored the medical opinions of Drs. Gonzalez, Hicks, and Antolik with respect to disabilities of the plaintiff. *Id.* at 6–7. This court adopted the Magistrate's Report and Recommendation and remanded the matter to the Secretary for the calculation and award of benefits to the plaintiff.

## II.

It is undisputed by the parties that the EAJA provides authority for an award of attorney's fees to the prevailing plaintiff in Social Security cases pending before October 1, 1984, the date of the repeal of the EAJA. Moreover, the parties do not dispute that the plaintiff was a prevailing party in terms of the EAJA, given the determination of the Magistrate and this court that she was entitled to benefits. The dispute here concerns whether the government was "substantially justified" in its position:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1982) (repealed 1984).

Both parties have called the court's attention to the case law that is said to give content to the question posed by the statute—whether "the position of the United States was substantially justified." In particular, the parties refer to *Washington v. Heckler*, 756 F.2d 959 (3rd Cir.1985). There the Third Circuit succinctly stated the applicable law with respect to attorney's fees under the EAJA in the context of a social security case. The court pointed out that the position of the Secretary includes not only her litigation position but also the agency position that made the lawsuit necessary. *Id.* at 961 (citations omitted). Moreover, the court explained that "substantial justification" means a "middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Id.* (citing *Dougherty v. Lehman*, 711 F.2d 555, 563 (3d Cir.1983) ). And, according to the Third Circuit, the burden of proving this substantial justification is on the Secretary *Id.*

■ To meet its burden, the Secretary must make three showings: 1) that the government had "a reasonable basis in truth for the facts alleged"; 2) that there was "a reasonable basis in law for the theory it propounds"; and 3) that there was "a reasonable connection between the facts alleged and the legal theory advanced." *Id.* The court added that because the burden is a strong one, it cannot be met simply by the presentation of "some evidence" in support of the Secretary's position. *Id.* (citation omitted).

*Washington v. Heckler* turned on the second showing that the Secretary had to make—whether there was a reasonable basis in law for her position. The Third Circuit suggested that if the case involved a close question of law, then the Secretary's position would be deemed reasonable, even if not ultimately accepted by the courts. *Id.* at 961–62. Yet, according to the court, a position that "clearly offends established precedent" would not be deemed "substan-

tially justified." *Id.* In *Washington v. Heckler,* the court found that the Secretary had ignored established precedent when the ALJ failed to evaluate the claimant's exertional and non-exertional impairments together, and had simply applied the Medical-Vocational Guidelines (the "grids") without relying on supporting evidence that would demonstrate the ability of the claimant to perform available work. *Id.*

In a companion case to *Washington v. Heckler, Dennis v. Heckler,* 756 F.2d 971 (3d Cir.1985), the court focused on the first factor—whether there was a reasonable basis in truth for the facts alleged by the Secretary. In reversing the district court's conclusion that her position was substantially justified, the court emphasized that the Secretary could not simply offer "some" evidence to satisfy its burden on the factual question. *Id.* at 976. Although the ALJ in the hearing had heard testimony from a vocational expert that the claimant, a chronic paranoid schizophrenic, could do light work, and although the ALJ thought from his own observations at the hearing that the claimant could undergo stress, the court concluded that in view of the entire record there was "no medical evidence to support a conclusion that plaintiff was not totally precluded from doing any work." *Id.* at 976. Moreover, the court found that the ALJ substituted his own diagnosis for that of the physicians, which violated clear Third Circuit precedent. *Id.* With respect to this latter point, the panel seemed to suggest that it could have found alternatively that the Secretary had no reasonable basis in law for her position, but that it was unnecessary to reach this issue given the decision on the facts. *Id.* at 976 n. 11.

### III.

#### A.

In the brief in support of the motion, plaintiff argues primarily that the Secretary has not satisfied her burden as to her factual position. Plaintiff's Memorandum at 4. The plaintiff suggests that, given the entire record, the Secretary has not shown that there is a reasonable basis in truth for the facts alleged. *Id.* In her response, the Secretary has listed in detail medical evidence on the record that would support her position. Defendant's Response at 3–4. The plaintiff counters in the reply brief that this list simply involves a "recitation of certain bits of evidence" that do not reach the level of carrying the Secretary's heavy burden on this factual issue. Reply Brief at 1.

The Secretary points out that whereas the Magistrate criticized the ALJ for not pointing to evidence contradictory to the Physical Capacities Evaluations of Drs. Tomassetti and Antolik, there was evidence from the examinations given the plaintiff during her hospitalizations that the plaintiff suffered no joint disease, no severe joint pain, and no limitation of motion. Defendant's Response at 3. Moreover, the Secretary states that in his examination Dr. Hicks found no bony abnormalities, no swollen joints, no deformity of the spine, and a full overall range of motion. *Id.* at 3. The net impression of Dr. Hicks was, the Secretary notes, that the plaintiff suffered from a degenerative joint disease primarily affecting the ankles and only moderately affecting her walking. *Id.*

Furthermore, the Secretary argues that, according to the record, plaintiff suffered no complications from her various hospitalizations. *Id.* The Secretary also reiterates the ALJ's determination that plaintiff's complaints of pain were not credible given the absence of any objective clinical findings to point to an impairment that would cause these symptoms. *Id.*

It is clear from the above discussion that this case does not present a factual situation exactly similar to that of *Dennis* because the Secretary does point to medical evidence supporting her conclusion that the plaintiff was not disabled. The question then becomes whether the Secretary has simply offered "some evidence," as the plaintiff contends, or whether she has met her "strong" burden of offering substantial justification on the factual issue.

The case in which the Third Circuit first discussed what might constitute "some evidence," *Tressler v. Heckler*, 748 F.2d 146 (3d Cir.1984), does not provide much guidance. There the Appeals Council, in overturning the decision of the ALJ that the claimant was disabled, offered no evidence that would contradict the claimant's treating physician's determination that the claimant was disabled. *Id.* at 148. So also the finding in *Dougherty v. Lehman*, 711 F.2d 555 (3d Cir.1983), that the Secretary of the Navy's position had a reasonable basis in fact is not helpful because the facts in the case were not in dispute. *Id.* at 564.

■ However, given that the Secretary's burden to provide *substantial* evidence on the factual issue is *strong*, I conclude that, based on the entire record, the Secretary has not met her burden here. Not only is there testimony by the plaintiff and her daughter-in-law as to the plaintiff's disability, but there are reports of her two treating physicians. In particular, Dr. Antolik's report refers to (1) the "swelling" in the plaintiff's hands that prevents her lifting any object of more than 10 lbs. and (2) her deteriorating condition. Administrative Record at 179. Moreover, the examination of Dr. Gonzalez, while revealing a normal spine curvature, disclosed restriction of motion in the plaintiff's neck and spine. *Id.* at 116. Although his ultimate description of her condition was fair, his diagnosis revealed hypertension, arthritis, and the bladder prolapse. *Id.* at 117. Furthermore, Dr. Hicks in his report found osteophyte formation of the left ankle and an impairment in the plaintiff's hand function. *Id.* at 153.

### B.

The second question to be addressed is whether there was a reasonable basis in law for the theory the Secretary propounded. The crux of this question, as *Washington v. Heckler* suggests, is whether the position of the Secretary is against clearly established precedent. 756 F.2d at 962. The plaintiff argues in her reply brief that, given the Magistrate's findings, the Secre-

tary violated established Third Circuit precedent 1) by ignoring medical evidence supportive of disability, 2) by failing to consider plaintiff's various severe impairments in combination, 3) by failing to rebut medical evidence of disability with contradictory evidence, and 4) by failing to furnish evidentiary support for credibility findings. Reply Brief at 2.

Plaintiff's first contention, that the ALJ ignored medical evidence supportive of the disability and thus that he violated the Third Circuit precedent of *Cotter v. Harris*, 642 F.2d 700 (3d Cir.), *reh'g denied*, 650 F.2d 481 (3d Cir.1981), refers to the Magistrate's observation that the ALJ did not explain why he rejected findings of Drs. Gonzalez, Hicks, and Antolik, the plaintiff's primary treating physician, concerning the disability. In *Cotter*, the ALJ made no mention of the medical opinions and findings of the claimant's treating physician and of a specialist who had examined the claimant. The court, reiterating a doctrine established in a long line of cases, pointed out that "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Id.* at 706.

In the instant case, the ALJ did not ignore the opinion of Dr. Antolik. He specifically stated that he considered the reports of that physician and of Dr. Tomassetti. Administrative Record at 14. Moreover, he explained his reason for discounting them: they were not accompanied by objective medical data. *Id.* It may be that the ALJ should have explained more fully why Dr. Antolik.s discussion of the plaintiff's deteriorating condition and her hand problems does not count as objective medical data, especially since the treating physician's opinion is given great weight, *see Cotter*, 642 F.2d at 704 (citation omitted). Yet the ALJ did consider the report and give reasons for his rejection of it. Thus he did not violate the *Cotter* admonition.

However, the ALJ did not explain why he rejected the findings of Drs. Gonzalez and

Hicks. Although he mentioned Dr. Hicks' finding that the plaintiff's hand function was somewhat impaired, Administrative Record at 13, the ALJ never stated in his review of the evidence why he discounted it. *Id.* at 14. Moreover, he did not explain why he rejected Dr. Gonzalez's finding that the plaintiff's motion was restricted. Accordingly, in his failure to confront medical evidence supportive of the disability, the ALJ violated the clear rule of *Cotter.*

Next plaintiff contends that the government failed to consider the plaintiff's various severe impairments in combination and thus violated the clearly established precedent of *Giordano v. Schweiker,* 551 F.Supp. 997 (E.D.Pa.1982). Although a district court decision cannot properly be characterized as clearly established Third Circuit precedent, *Giordano* does refer to *Bittel v. Richardson,* 441 F.2d 1193, 1195 (3d Cir.1971). This latter citation supports the plaintiff's argument that the precedent in this circuit requires the Secretary to consider the combined effect of the claimant's several illnesses.

Although the ALJ considered each of the various ailments of the plaintiff, her arthritis, diverticulitis, and hypertension, the only evidence of his considering them together is the following: "While the claimant undoubtedly suffers some degree of discomfort due to her multiple medical problems, the medical evidence does not support a finding that any of these impairments can be considered to be a severe impairment within the meaning of the Social Security Act." Administrative Record at 14. As this statement demonstrates, the ALJ focussed his attention on the individual impairments rather than upon the *effect* of the several illnesses. *Id.* With this focus it is understandable that the ALJ would overlook Dr. Antolik's remark about the general deteriorating condition of the plaintiff. *Id.* at 179. Yet such is not permitted by the law of this circuit. Thus, once again the Secretary disregarded clearly established precedent.

Furthermore, plaintiff contends that the Secretary violated the precedent of *Rossi v.*

*Califano,* 602 F.2d 55 (3d Cir.1979), when she failed to rebut medical evidence of the disability with contradictory evidence. This contention refers to the Magistrate's observation that the ALJ offered no contradictory evidence that would justify his rejection of the reports of Drs. Tomassetti and Antolik. Magistrate's Report at 8. Although there was clinical evidence and testimony from the claimant's physician that she was disabled, the ALJ in *Rossi* based his rejection on no substantial contrary evidence. *Id.* at 58–59.

It would be difficult, however, to compare the situation of *Rossi* to that of the instant case. In *Rossi,* upon an examination of the *entire* record, the court found only one piece of evidence that might serve as evidence contradicting the plaintiff's assertion of her disability. *Id.* at 58. While the ALJ did not cite contradictory evidence immediately after his dismissal of the reports of Drs. Tomassetti and Antolik, he did refer to such evidence in the preceding paragraph of his report. Administrative Record at 14. And the record itself does provide such evidence, although this evidence has not risen to the level of being substantial. Accordingly, the claim that the government violated the clear precedent of *Rossi* is groundless.

Finally, plaintiff argues that by failing to furnish evidentiary support for credibility findings the government violated the clear precedent of *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir.1979). This is in reference to the Magistrate's finding that the ALJ did not provide support for his dismissal of the plaintiff's subjective complaint as not being credible. Magistrate's Report at 8. *Dombrowolsky,* however, stands mainly for the proposition that testimony of subjective pain by the claimant should be given weight. *Id.* at 409. Moreover, *Dombrowolsky* seemed to turn more on the fact that the claimant was unrepresented at the ALJ hearing and that the ALJ made an improper use of the vocational expert testifying at the hearing, *see id.* at 407–410, than on the question of providing evidentiary support for credibility findings.

Again, whereas the ALJ did not give as much weight as he should have to the plaintiff's subjective complaints of pain, complaints supported by testimony of the plaintiff's daughter-in-law, and whereas the ALJ should have discussed in more detail *why* he rejected the subjective allegations of the plaintiff, a review of the record discloses that the ALJ did partially explain his rejection of her testimony. For he referred to his earlier findings, findings based upon evidence on the record, to explain his rejection of the plaintiff's credibility. Administrative Record at 15. And although these findings are not adequate, they do at least suggest why the ALJ rejected the testimony of the plaintiff. Therefore, I cannot accept plaintiff's argument that the government violated the clearly established precedent of *Dobrowolsky.*

Plaintiff also claims that the Secretary ignored the regulations of the Secretary compelling a finding of disability. Plaintiff's Memorandum at 4 (citing Magistrate's Report at 8). It is unclear whether this is an allegation of the Secretary's failure to follow the established law or to make a correct factual determination, or alternatively her failure to make a reasonable connection between the facts and her legal theory. *See Washington,* 756 F.2d at 961. I will treat this claim as a challenge to the Secretary's failure to have a reasonable basis in law for her theory.

Plaintiff argues that the Magistrate faulted the ALJ for not following the Medical-Vocational Guidelines (the "grids") that would have compelled a finding of disability in the plaintiff's case. However, it is unclear that the ALJ misapplied the grids given his finding that the claimant had no severe impairment and no impairment that would significantly limit her basic work related functions. Administrative Record at 15. For the application of the grids depends upon an evaluation of the "residual functional capacity" of the claimant, and this in turn revolves around a determination of whether the claimant has a severe medically determinable impairment. 20 C.F.R. § 404 subpt. P, app. 2, 200.00(c), (d)

(1985). Because the ALJ never reached the question of the residual functional capacity of the plaintiff, his failure to apply the grids is understandable.

In the context of the entire Report and Recommendation, the Magistrate's remarks about the grids suggest that the ALJ should have determined the residual functional capacity of the claimant to be limited to sedentary or light work on account of her severe impairments. Magistrate's Report at 8 ("assuming she retained the residual functional capacity ...") With this capacity, and in light of the plaintiff's age, limited education, and past unskilled work experience, an application of the grids would have compelled a finding of disabled. However, this failure to apply the grids does not constitute a violation of clearly established precedent in light of the ALJ's finding—albeit an erroneous one—that the plaintiff had no severe impairment.

### IV.

In light of the above discussion, I find that the Secretary has not carried her strong burden of proving that her position was substantially justified. Although the factual basis for her position was not as barren as was the case in *Dennis,* it did not have a reasonable basis in truth in light of the entire record. Moreover, although the Secretary did not violate clearly established precedent in all the points of law that the plaintiff cites, she did on several, and that is enough for her to fail to carry her burden of establishing that there exists a reasonable basis in law for her theory. Given this finding, the plaintiffs will be entitled to attorney's fees under 28 U.S.C. § 2412(d)(1)(A).

Plaintiff's attorneys have submitted an affidavit in which they list the hours spent litigating this case. The hours total thirty-five and, at an hourly rate of $75.00 per hour, the fees requested are $2,625.00. Defendant does not contest this sum. Since these fees are reasonable in statutory terms, *see* 28 U.S.C. § 2412(d)(2)(A), they

will be awarded pursuant to an attached order.